STATE, *ex rel.* BUD HOSACK, and STATE *ex rel.* ISRAEL PEARL, v. H. V. YOCUM, Chief of Police, City of Miami Beach.

186 So. 448.

2 Cases

Opinion Filed February 3, 1939.

Rehearing Denied February 22, 1939.

*Aronovitz & Goldstein,* for Petitioners;

*Zubernick & Zubernick,* for Respondent.

CHAPMAN, J.,—It has been made to appear by petition for writ of habeas corpus that Bud Hosack has violated Section 1 and Israel Pearl has violated Section 2 of Ordinance No. 502 of the City of Miami Beach, Florida, and that the Ordinance which the petitioners were charged with violating is invalid. Sections 1 and 2 of the Ordinance, *supra,* are viz.:

"Section 1. It shall be unlawful for the driver of any taxicab or other passenger vehicle for hire, while engaged in such occupation within the City of Miami Beach, Florida, to solicit the patronage of any passenger in the vehicle driven by him for any hotel, inn, or apartment house.

"Section 2. It shall be unlawful for the driver of any taxicab or other passenger vehicle for hire, while engaged

in such occupation within the City of Miami Beach, Florida, to divert or attempt to divert a prospective guest of any hotel, inn, or apartment house to any other hotel, inn, or apartment house."

The Ordinance *supra* was enacted by the City of Miami Beach, Florida, under Chapter 7672, Special Acts of 1917, Laws of Florida, and subsequent amendatory Acts.

It is contended by counsel for the petitioners that Sections 1 and 2 of Ordinance No. 502 violate:

1. The Constitution of the United States, viz.:

"FIFTH AMENDMENT. No person shall be deprived of life, liberty or property without due process of law.

"FOURTEENTH AMENDMENT. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

2. The Constitution of the State of Florida:

Declaration of Rights, viz.:

"Section I. All men are equal before the law, and have certain inalienable rights, among which are those of enjoying and defending life and liberty, acquiring, possessing and protecting property and pursuing happiness and obtaining safety.

"Section XII. No person shall be subject to be twice put in jeopardy for the same offence, nor compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property without due process of law; nor shall private property be taken without just compensation.

Section XVII. No bill of attainder, *ex post facto* law, nor any law impairing the obligation of contracts shall ever be passed."

The factual situation in the City of Miami Beach actuating the adoption of Ordinance No. 502, as argued at the bar of this Court and by briefs, is: The City of Miami Beach has 187 hotels and 640 apartment houses which are occupied by several thousand tourists in the winter season. Hotel managers would offer taxi drivers bonuses for each guest brought to their hotels and the drivers, desiring to earn the extra money, would resort to unscrupulous methods to induce the passengers while in the taxicabs to stop at the driver's hotels. If the passenger was undecided where to stop, the driver would recommend his hotel. If the passenger ordered him to a hotel of his own selection, the driver would reply that his hotel was filled and could not accommodate him. It developed that the guests were not only annoyed but the hotels were being burdened with a heavy expense. The taxicab companies refused to discipline their drivers, and the practice of bonuses given by the hotels to the drivers could not be controlled. Guests were diverted from one hotel or apartment house to another by similar methods. The City of Miami Beach concluded that the solicitation of guests and their diversion from one hotel or apartment house to another by a taxi driver constituted a traffic menace, became annoying to their tourists, and was a deceptive practice, and likewise a harmful misrepresentation on the part of the taxi drivers, so under the police power of said City the Ordinance now before the Court was adopted.

Ordinances similar to the one here involved have been sustained under the police power of the city to adopt the Ordinance and this ruling appears to be in harmony with holdings of many of the highest courts of the country. McQuillin on Municipal Corporations (2nd Ed.), Volume 3, pages 252-253, par. 1000, sustains this view and in so doing says:

"Regulating Hotel Drummers—Hackman. By virtue of delegated police power a municipality may regulate the place and manner in which hack and taxi drivers and hotel runners may solicit patronage. Under statutory power to regulate the drumming or soliciting of persons arriving on trains or otherwise for hotels, etc., an ordinance prohibiting drumming strangers on the streets for hotels, etc., except while occupying at railroad stations a place designated by the chief of police, which, in effect, prohibits drumming on any other place on the streets in the city, is valid, where construed as regulating drumming and soliciting persons arriving in the city and not those that have become located and have ceased to be arrivals. * * * "

"Regulations of solicitation by and stands for hackmen at a railroad depot are not necessarily unreasonable although the stands assigned to different hotels are not of equal value as positions for solicitation of incoming passengers. A city may by ordinance prohibit drumming for any hotel or for the transportation of persons or baggage on any boat or in any depot, and the application of such ordinance will not be limited by a contract between individuals, e. g., a contract between a transfer company and a railroad company permitting the former to solicit in the depot. It is within the police power to prohibit drumming on the streets and public places as well as on trains. Thus an ordinance forbidding any proprietor of a hotel and boarding house to drum or solicit on streets and public places, except within fifty feet of his or her establishment, was sustained. By virtue of express power an ordinance may require hotel runners to wear a badge. But general power to regulate, it has been held, is not authority to require hotel drummers to wear a badge, or pay a license."

This Court held in the case of Levy v. Stone, 97 Fla. 458, 121 So. 565, that an ordinance could be adopted under the

police power of a city to protect the public against loss from fraudulent or unscrupulous practices, and in doing so said:

"The police power may be exercised in appropriate cases (See People v. Beakes Dairy Co., 119 N. E. R. 118, 3 A. L. R. 1267) to protect the public against loss from fraudulent or unscrupulous practices in commercial and financial transactions, particularly where the thing dealt with, or the method of dealing, readily adapts itself to the perpetration upon the public of deception or fraudulent imposition. Holsman v. Thomas, 147 N. E. R. 750, 39 A. L. R. 760; Biddles v. Enright, 146 N. E. R. 625, 39 A. L. R. 766. See also Goldstein v. Maloney, 62 Fla. 198, 57 So. R. 342."

The fundamental right to earn a livelihood in pursuing some lawful occupation is protected by the Constitution; and in fact, many authorities hold that the preservation of such right is one of the inherent or inalienable rights protected by the Constitution. The fundamental right of a person to pursue a calling cannot be taken away by special legislative enactment, but the same is subject to proper and reasonable police regulations. This reasonable regulation may be imposed within proper limits without invading the fundamental right to engage in a lawful business or occupation. When a business is essentially public in character and assumes proportions which may injuriously affect or menace the welfare, health, safety, public interest or which may be commonly classified under the police power, then the business or occupation must be regulated in behalf of the public welfare. See 11 Am. Jur. Par. 337, pages 1150-51.

Let us inquire if the regulation of the taxicab business in the City of Miami Beach is a reasonable regulation. It is pointed out that the evils to be corrected by this ordinance were: (a) a traffic menace; (b) deceptive practices; (c) harmful misrepresentations; (d) annoyance to tourists;

(e) unethical practices existing between certain hotels and apartment house. It appears that the regulation here is a reasonable one and sustained by weight of authority.

It is next contended that Ordinance No. 502 is not authorized by the spirit or letter of the police power of the charter of the City of Miami Beach. We have examined carefully the brief for petitioners and fail to observe citation of authorities to sustain this assignment.

It is contended that the ordinance *supra* is in contravention of the Fifth and Fourteenth Amendments to the Federal Constitution. This contention is fully answered by this Court, speaking through Mr. Justice WHITFIELD, in the case of Dutton Phos. Co. v. Priest, 67 Fla. 370, 65 So. 282, when it was said:

"The provisions of the organic law that no persons shall be deprived of life, liberty or property without due process of law, nor denied the equal protection of the laws, are not intended to hamper the States in the discretionary exercise of any of their appropriate sovereign governmental powers, unless substantial private rights are arbitrarily invaded by illegal or palpably unjust, hostile and oppressive exactions, burdens, discriminations or deprivations. * * *

"Under the American System of Laws and government every one is required to so use and enjoy his own rights as not to injure others in their rights or to violate any law in force for the preservation of the general welfare. This principle does not conflict with the express constitutional right that all persons have of acquiring, possessing and protecting property.' All property rights are held and enjoyed subject to the fair exercise of the State's police power to establish regulations that are reasonably necessary to secure the general welfare of the State. The selection and classification of the subjects of statutory regulation are within the lawmaking discretion of the legislature. See

King Lumber & Mfg Co. v. Atlantic Coast Line R. Co., 58 Fla. 292, 50 South. Rep. 509; Atlantic Coast Line R. Co. v. Goldsboro, 232 U. S. 548, 34 Sup. Ct. Rep. 364, 58 L. Ed. (721).

"The wisdom and necessity, as well as the policy, of a statute are authoritatively determined by the legislature. Courts may inquire only into the power of the legislature to lawfully enact a particular statute; and all doubts as to its constitutionality are resolved in favor of the statute. * * * "

The petitioners are remanded for further proceedings in the lower court. It is so ordered.

WHITFIELD, P. J., and BROWN, J., concur.

BUFORD, J., concurs in the opinion and judgment.

Justices TERRELL and THOMAS not participating as authorized by Section 4687 Compiled General Laws of 1927 and Rule 21-A of the Rules of this Court.