**HAV-A-TAMPA CIGAR COMPANY,** a corporation, v. **THOMAS A. JOHNSON,** as Chairman of the State Road Department of Florida.

5 So. (2nd) 433                                    En Banc
December 19, 1941          Rehearing Denied January 12, 1942

Whitaker Brothers, for appellant.

J. Tom Watson, Attorney General, Donald Carroll, Assistant Attorney General, T. M. Shackleford, Jr., Richard W. Ervin and M. N. Arfaras, for appellees.

Knight & Green, and Worth, Bivens & Lively, as amicus curiae.

## STATEMENT

The bill of complaint herein alleges:

"that plaintiff has, ever since its establishment, continuously and still is, using as a medium of advertising, small signs erected and maintained along the various public highways of the State of Florida, with advertising directing attention of the public to and advertising the cigars manufactured by plaintiff.

". . . that it has expended and has invested at the present time large sums of money in such signs erected and maintained by it along the various public highways in the State of Florida; that it has spent and has invested large sums of money in the purchase, construction, erection and maintenance of said signs; and likewise it has expended and has invested at the present time large amounts of money in the sites on real estate which it has acquired, either by purchase or lease, whereon said signs are constructed, erected and are being maintained, and said signs constitute, and said sites on said real estate whereon the same are erected and maintained, constitute a most valuable asset of plaintiff, and if the said signs are de-

stroyed or displaced or removed, it would seriously impair and cripple plaintiff's business; that in acquiring the sites where said signs are being maintained, plaintiff selected such sites as would be the most valuable locations for such advertising purposes and at the same time, said sites and signs being maintained by the plaintiff do not in any wise interfere with the view of approaching vehicles, and in no way interefere with the traveling public.

". . . that Section 9 of Chapter 20446 of the Acts of the 1941 Legislature provides as follows:

" 'No advertisement, advertising sign or advertising structure shall be constructed, erected, used, operated or maintained;

" '(a) Within 15 feet of the outside boundary of a public highway or within one hundred feet of any church, school, cemetery, public park, public reservation, public playground, state or national forest, highway or railroad intersections outside the limits of any incorporated city or town;

" '(b) Which involves motion or rotation of any part of the structure or displays intermittent lights;

" '(c) Which uses the word 'stop' or 'danger' or presents or implies the need of requirement of stopping or the existence of danger, or which is a copy or imitation of official signs;

" '(d) Which are placed on the inside of a curve or in any manner that may prevent persons using the highway from obtaining an unobstructed view of approaching vehicles.'

". . . that the defendant, as Chairman of the State Road Department is clothed with the duty and responsibility of enforcing the provisions of said Chapter 20446 and has construed said Section 9 as pro-

hibiting the erection, maintenance or continuance of any sign within 15 feet of the outside boundary of any public highway, with the exception of such signs as are exempted entirely from the operation of said Act by Section 14 thereof, plaintiff's signs not being within such exemptions.

". . . that according to the clear unambiguous language of said Section 9, the only signs prescribed thereby from being erected or maintained within 15 feet of the outside boundary of public highways, are such signs only as are described in sub-sections B, C, and D; that none of the signs owned and being maintained by plaintiff are of such character or description as set forth in sub-sections B and C, nor are any of them located at such place as is described in sub-section D, and therefore, none of the signs owned and maintained by plaintiff fall within the description or definition as set out and specified in said sub-sections B, C, and D, and therefore said signs being maintained by plaintiff are not prohibited or proscribed by the provisions of said Section. The defendant, however, is claiming and insisting that notwithstanding the clear and unequivocal provisions of said Section, that said Section does embrace and cover the signs being maintained by plaintiff and is claiming and insisting that said Section 9 embraces and covers all signs, save and except such signs as are specifically exempted from the operation of said Act by Section 14.

". . . that it owns real estate sites, either by purchase or lease, in Hillsborough County, Florida, of upwards of 75, whereon it has been for a long number of years and is now maintaining medium sized signs, advertising the cigars manufactured by plaintiff; that it likewise owns, either by purchase or lease,

in various other counties of the State, a large number upwards of 500 similar real estate sites on which there is being now maintained similar signs, and which have been so owned and maintained by plaintiff for a long number of years; that most of said signs so owned, operated and maintained by plaintiff, located in Hillsborough County, Florida, as well as in the other counties of said State, are located on sites, that is to say, real estate, owned by purchase or lease by plaintiff, and said signs situated within 15 feet of the outside boundary of a public highway; the situation and location being such, however, as to in no wise obstruct or interfere with the view of approaching vehicles or the traveling public in any way.

". . . that the defendant has employed and designated a large number of persons to aid and assist him in the carrying out and making effective the provisions of Chapter 20446 of the Acts of the 1941 Legislature; that the defendant has issued definite orders and instructions to all such employees and designated persons to immediately, on the day said Act becomes effective, begin tearing down and removing all signs within 15 feet of the outside boundary of any public highway in the State of Florida, including Hillsborough County, with the exception of such signs as are exempted from the operation of said Act, by Section 14 thereof; that under said instructions and orders so issued, the defendant, through his employees and agents, and persons designated by him will enter upon the private premises of plaintiff and remove and destroy the signs now being maintained by it, on said sites in Hillsborough County, Florida, owned by it and located within 15 feet of the outside boundary of the public highways in said County, unless restrained

and enjoined by this Honorable Court; that the defendant is not only threatening to enter upon the premises owned by plaintiff and threatening to destroy and remove its private property without its consent or permission, but actually has issued an order to his employees, servants and designated persons employed by him to aid him in carrying out the provisions of Chapter 20446, to enter upon the premises of all persons, including the plaintiff, who are maintaining signs within 15 feet of the outside boundary of any public highway in the State of Florida (with the exception of such signs as are entirely exempted by said Act by Section 14) immediately upon said Act becoming effective, and plaintiff alleges that the defendant and his employees, agents and designated persons, will so enter upon the private premises of the plaintiff, and will destroy its private property without any right or authority in law, which said act will cause plaintiff to suffer irreparable injury and damage, unless enjoined and restrained by this Honorable Court.

". . . that the only purpose or use to which it can put said real estate or sites on which said signs are being maintained, is for the purpose it is being used, to-wit: to maintain sign for advertising purposes.

". . . that the act of the defendant in entering upon the premises of this plaintiff and destroying its private property would not only be in violation of the plain provisions of Section 9, Chapter 20446, but would also be in direct violation of Section 1 of the Declaration of Rights of the Constitution of the State of Florida, which guarantees to all persons the right of acquiring, possession and protecting property, as well as of Section 12 of the Declaration of Rights of

said Constitution of Florida, which guarantees that no person shall be deprived of life, liberty or property without due process of law, nor that private property be taken without just compensation, and also in direct violation of Section 1, Article 14 of the Amendment to the Constitution of the United States, which provides that no State shall deprive any person of life, liberty or property without due process of law.

". . . that said Act, and particularly Section 9 thereof, does not prescribe or prohibit the signs which are being owned and maintained by plaintiff within 15 feet of the outside boundary of public highways in Hillsborough County, and elsewhere in the State of Florida. Plaintiff further alleges, however, that if the court should hold as the defendant has construed Section 9, to mean that all signs are prohibited (save and except those exempted in Section 14), and that said Section provides that defendant can enter the premises of plaintiff and destroy his vested property rights, then said Section is invalid, unconstitutional and void for the reason that it amounts to the taking of private property without due compensation; and for the further reason that it would amount to the taking of private property without any necessity therefor for the protection of the public safety, health or morals, and would be doing violence to the constitutional guarantees, State and Federal, hereinabove referred to. Also, if the Court places the construction upon said Section 9 as is being placed by the defendant, said Section 9 is void, invalid and inoperative for the additional reason that it is discriminatory, arbitrary and unreasonable for the reason that by Sections 14 and 14-A, certain interests are permitted to maintain advertising and advertising signs within 15

feet of the outside boundary of public highways, while the vested interests and property rights of this plaintiff would be destroyed, and it denied the same privilege and right of such other persons, and therefore it would amount to denying to plaintiff equal protection of the law, and would constitute an illegal and unlawful discrimination.

". . . that the only signs which it is maintaining are signs advertising its own products; it is not engaged in the business of outdoor advertising within the purview and meaning of said Chapter 20446, and the provisions of said Act are not applicable to the signs being maintained by the plaintiff, and the defendant has no jurisdiction over said signs himself, and no power or authority to do anything in relation to said signs, and no power or authority to require the plaintiff to do anything in order to enjoy its right to maintain its said signs and advertise the manufacture of its own products.

"Plaintiff, being without remedy except in a court of equity, prays:

"First: That this Honorable Court do grant unto plaintiff a temporary injunction or restraining order, enjoining and restraining the defendant, Thomas A. Johnson, as Chairman of the State Road Department of Florida, as well as all of his agents, employees and designated persons, employed to assist him in carrying out the provisions of Chapter 20446 of the Acts of the 1941 Legislature, from entering upon its private premises, consisting of real estate sites located in Hillsborough County, and elsewhere within the State of Florida on which plaintiff is maintaining advertising signs, which are located within 15 feet of the outside boundary of public highway of said County,

as well as any other counties in the State of Florida, and also enjoining and restraining said defendant, and all of his agents, employees and designated persons, employed to assist him in carrying out the provisions of Chapter 20446, of the Acts of the 1941 Legislature, from in any wise molesting, injuring or removing or interfering with any of said signs.

"Second: And upon final hearing, that the court make said injunction permanent."

Motion was filed to dismiss on grounds:

"1. That there is no equity in the bill.

"2. That Chapter 20446, Laws of Florida, Acts of 1941, including the provisions complained of in said Bill of Complaint, is a valid regulation by the State of Florida within its police powers.

"3. That no provision of the Constitution of the State of Florida or of the Constitution of the United States, is violated by said Chapter 20446, or any of the provisions thereof complained of in said Bill of Complaint.

"4. That it is within the province of the Legislature to regulate the locations of advertising signs and structures within reasonable limits along or near the public highways, and such regulation by Chapter 20446, Laws of Florida, Acts of 1941, is reasonable and valid.

"5. That the public safety, health, morals, welfare and comfort of the people justify the regulations such as are prescribed by Chapter 20446, Laws of Florida, Acts of 1941.

"6. That there is no unlawful taking of property without just compensation by said Chapter 20446, or any of the provisions thereof complained of by said

Bill of Complaint, but on the contrary, said law, in-cluding the sections complained of, is a reasonable police regulation of the State which the State Legislature was and is authorized to make.

"7. That paragraphs (a), (b), (c) and (d) of Section 9 of said Chapter 20446 are separate and distinct prohibitions and plaintiff's contention that only those classes of signs referred to in paragraphs (b), (c) and (d) are required to be erected and maintained outside of the 15 foot setback limit contained in paragraph (a) is contrary to the plain language of said Section.

"8. That the fact that plaintiff employs large numbers of persons in its cigar manufacuring busi-ness and has many signs advertising its product along the highways gives it no special privilege, nor does it withdraw the police power of the State to regulate any phase of plaintiff's business in the public interest.

"9. That the fact that plaintiff is not engaged in the business of outdoor advertising in nowise takes it out from under the provisions of said Chapter 20446, since it regulates all outdoor advertising, and not merely those engaged in such business."

The following order was made:

"This cause coming on this day upon application by plaintiff for temporary injunction and upon motion to dismiss filed by the defendant to the bill of com-plaint herein, and same having been argued by coun-sel.

"It is thereupon Ordered, Adjudged and Decreed that said application for temporary injunction be denied and said motion to dismiss the bill of complaint be and the same is hereby granted. The Court asking

plaintiff if they desired to amend said bill, plaintiff having stated that it did not wish to do so, it is thereupon further,

"Ordered, Adjudged and Decreed that the said bill of complaint be and the same is hereby dismissed."

Plaintiff appealed.

WHITFIELD, J.:

Appellant in effect contends (1) that Chapter 20446, Acts of 1941, proscribes only such signboards as are described by sub-sections (b), (c) and (d) of Section 9 of the statute and that the maintenance of appellant's advertising signboards is not forbidden by such subdivisions (b), (c) and (d); (2) that if subdivision (a) of Section 9 is applicable to appellant's advertising signboards, then such subdivision (a) violates Sections 1 and 12 of the Declaration of Rights and the due process clause of the Federal Constitution; (3) that if subdivision (a) of Section 9 is construed to prohibit *all* signs within fifteen feet of the outside boundaries of a public highway, this when construed in connection with Sections 14 and 14-A of the Act, renders such provisions of the Act discriminatory and void.

Appellant's construction of the Act is not in harmony with the obvious intent of the legislature as disclosed by a consideration of the subject matter and objectives of the enactment and the terms and method used in expressing the legislative purposes.

Statutes enacted under the police power should be interpreted to effectuate a lawful purpose that is designed to conserve the safety and general welfare of the public in the use of the public highways. Mere technical errors, if any, in the method of expressing the purpose designed should not effect the enforce-

ment of a statute to effectuate the law-making purpose as determined by a fair consideration of the entire enactment with reference to its controlling intent.

Organic rights "to acquire, possess and protect property" are subject to the lawful exercise of the inherent sovereign police power of the State to provide for and to conserve the safety, health, morals, comfort and general well being of human life and activities. Private rights may be regulated and restricted for the public welfare and without compensation when not done arbitrarily, needlessly or oppressively. Nuisances caused by the possession or use of property may be abated as provided by valid law without violating organic property rights, when that remedy is necessary to protect public welfare. See State v. Yocum, 136 Fla. 246, 186 So. 448, 121 A.L.R. 270.

The statute in this case is appropriate to accomplish a general public purpose and is not shown to be an arbitrary or unnecessary exercise of the police power of the State.

Exceptions to the operation of the statute contained in 14 and 14-A of the Act (quoted in the statement), are not applicable to subdivisions (b), (c) and (d) of Section 9; but such exceptions are applicable to subdivision (a) of Section 9. This does not operate to cause an unjust discrimination against, or an undue burden to, those subject to subdivision (a) of Section 9, taken in connection with the preceding provision of Section 9. This is so for the reason that such exceptions have a substantial basis in practical differences that inhere in the subject regulated; and the exceptions harmonize with the policy and purpose of the enactment under the police power of the State to

conserve public safety, which enactment regulates commercial or other advertising, including advertisements of manufactured products, by means of signboards along numerous highways containing matter designed to attract drivers of rapidly moving motor vehicles and others on the highways, thereby increasing the hazards and risks vitally affecting the safety of public travel and transportation on the highways in the State.

Statutes should be interpreted to effectuate the lawmaking intent as shown by the subject, the object and the intendments of the enactment, and by the language used to express a lawful purpose. See Dutton Phos. Co. v. Priest, 67 Fla. 370, 65 So. 282; Whitaker v. Parsons, 80 Fla. 352, 86 So. 247.

Section 9, Chapter 20446, Acts of 1941, contains general statements (1) of advertising activities that are forbidden, (a) of special classes of forbidden advertising and (3) of the localities in which they are prohibited. The first portion of Section 9 may operate severally with each subdivision (a), (b), (c) and (d). Section 14 of the Act contains exceptions to Section 9 except as to subdivisions (b), (c) and (d) of Section 9. Section 14-A contains a separate exception to the provision of the Act.

As shown by the purpose designed and the language and method of expression used, the intent of Chapter 20446 is that the first portion of Section 9 taken with subdivision (a) of Section 9, shall constitute a statutory prohibition or command that no advertisement or advertising sign or structure shall be . . . maintained: (a) within fifteen feet of the outside boundary of a public highway or within one hundred feet of any church, school, cemetery, public park, public

reservation, public playground, State or national forest, highway or railroad intersection outside the limits of any incorporated city or town.

But such prohibition contained in the first portion of Section 9, when considered with subdivision (a) of Section 9 is subject to the exceptions as stated in Section 14 of the Act; though the first portion of Section 9, when taken separately with either of subdivisions (b), (c) and (d) of Section 9, is not subject to the exceptions contained in Section 14.

If appellant has not violated subdivisions (b) and (c) of Section 9, it is immaterial to it whether (b) and (c) are legally operative since such subdivisions (b) and (c) of Section 9 do not affect the validity or the operation of other portions of the statute upon the activities of the appellant as shown by the allegations of appellant's bill of complaint. There seems to be no objection to the operation of subdivision (d) of Section 9 of the statute as a proper exercise of the police power of the State.

Allegations of appellant's bill of complaint indicate that the purpose of the plaintiff appellant is to maintain the advertising signboards described in the bill of complaint, near the public highways in the State so that the advertisements of cigars manufactured by the plaintiff may be seen for the plaintiff's benefit by those on the highways.

A purpose and intent of the statute is to prevent commercial and other advertising signboards being maintained near the public highways so as to attract the attention of drivers of rapidly moving vehicles and others on the public highways in the State, thereby distracting the attention of such drivers and others from necessary continuing attention and care

in operating vehicles on the highways. Such signboards obviously increase the hazards and risks of public travel on the highways and clearly justify the statutory regulations under the police power which are here challenged. There are other considerations that justify the enactment of the statute. Modern highways and motor vehicles together with the enormous increase in travel and transportation in speedy vehicles make it necessary to conserve the safety of highway travel and those who may go upon the highways by all reasonable and appropriate means within the judgment of the lawmakers. See Swisher v. Johnson, filed this term.

Appropriate and reasonable statutory regulations of commercial and other signboard advertising under the police power to conserve the safety and comfort of the traveling public on the highways, do not violate private property or contract rights, even if the use of property and the operation of contracts be restrained by such regulations commensurate with the just requirements of public safety and general welfare, no arbitrary or oppressive exercise of governmental authority being made to appear. There is in such cases no taking of private property for public use without "just compensation" within the intendments of the organic right of eminent domain which is controlled by Section 12 of the Declaration of Rights, Section 29 of Article XVI of the Constitution not being applicable except in condemnation by "any corporation or individual" when "full compensation" is required.

Affirmed.

BROWN, C. J., and THOMAS, JJ., concur specially.

TERRELL and CHAPMAN, JJ., concur.

BUFORD and ADAMS, JJ., dissent.

BROWN, C. J., concurring specially with the opinion of Mr. Justice WHITFIELD:

Undoubtedly the rights of private property, which are guaranteed by our Bill of Rights, can be restricted, and in some cases entirely taken away, in the proper exercise of the police power for the purpose of the necessary protection of the health, morals, safety, and general welfare of the public. But any proposed new restriction or invasion of existing private property rights, in the name of the police power, should be carefully scrutinized, and should not be allowed unless the common good of the public is so much at stake as to justify the restriction.

As I view it, we cannot hold valid under the Constitution all of the provisions of Section 9 of Chapter 20446 upon the ground of public safety, Sub-paragraphs (b), (c) and (d) of Section 9, when construed in connection with the first clause in Section 9 and the first twelve words of sub-paragraph (a), and the clause therein referring to intersections do affect the public safety. When so read, Section 9 provides that no advertisement, advertising sign or advertising structure shall be constructed, used, operated or maintained within fifteen feet of the outside boundary of a public highway, or within one hundred feet of any highway or railroad intersection outside the limits of incorporated cities or towns, which involve motion or rotation of any part of the structure or displays intermittent lights, or which uses the word "stop" or "danger," or presents or implies the need or requirement of stopping or the existence of danger, or which is a copy or imitation of official signs, or which are placed on the inside of a curve, or in any manner

that may prevent persons using the highway from obtaining an unobstructed view of approaching vehicles. I think that signs so placed and of the character described, *do* affect the safety of travelers using our public highways, and are valid. But, as I see it, to so construe the first clause and paragraph "(a)" of Section 9 of the Act as to absolutely prohibit, on the ground of public safety, the construction or maintenance of any advertising sign or advertising structure of any sort on private property within fifteen feet of the outside boundary of the right of way of any public highway, beyond City limits, is to base the Act upon a ground which has such a slight relation, if any, to the safety of automobilists or other persons using the highways as *not* to justify this invasion of the rights of private property upon the ground that it is a necessary exercise of the police power in order to protect the public safety.

Furthermore, this provision of Section 9 prohibiting all signs within fifteen feet of the outside boundaries of any public highway results in great inequality on account of the fact, of which the court may take judicial knowledge, that we have public highways in this State whose rights of way vary from thirty feet to two hundred feet or more in width. If this Section is to be upheld upon the ground of safety of the public, it would seem that it should have prohibited all sign boards within a designated number of feet from the center of the highway, regardless of the width of the right of way.

I take it that the State Road Department has the power to and can prevent the erection of or can remove any sign board within the boundaries of the rights of way of public roads without the aid of this

statute. But Section 9 proposes to go fifteen feet beyond the outside boundaries of rights of way regardless of the width of the rights of way, and I think the Court can take judicial knowledge of the fact that it would be only in very rare instances that signs outside rights of way which are 100 to 200 feet or more in width would have an appreciable effect whatsoever upon the safety of the use of the highways; although sign boards erected fifteen feet outside a narrow right of way, especially on curves, might interfere with a motorist's view of the road ahead, and thus would affect the public safety.

It would seem also that the public safety could be conserved, and at the same time public convenience promoted, by allowing a limited number of small unobtrusive signs, located within easy sight of the highway, giving the traveling public information as to the distance to the next motor court, inn or hotel. It frequently occurs that information of this kind, in spite of its advertising character, is of real value to many of the tourists who travel our highways during the winter season. This thought is suggested by a brief which has been filed in this case with the permission of the court by Messrs. Worth, Bivens & Lively as amicus curiae.

Having reached the conclusion in my own mind that this Act as written, and particularly Section 9 thereof, cannot be upheld in its regulation with reference to sign boards located on private property within fifteen feet of the outside boundary of all rights of way, regardless of width, upon the ground of public safety, the question arises: Can the Act be upheld upon the ground that the Legislature has the right to protect the traveling public from artificial obstruc-

tions to the view of the scenic beauties of Florida, which otherwise might be seen and enjoyed, not only by tourists visiting our State, but also by our own citizens, where such obstructions are not an absolute necessity and are erected for business reasons, such as the signs and sign boards dealt with in this Act? I strongly suspect that, although no mention is made of it in the Act, this was one of the main purposes of this statute. Various regulations of outdoor advertising, such as sign boards along the highways, have been upheld upon the somewhat tenuous ground that they affected in some way the public health, morals or safety, when as a matter of fact I believe that in most cases the purpose behind the statute was mainly the protection of what might be called the right of view of the natural beauty of the surrounding country. This undoubtedly means a great deal to the majority of people who are travelling our highways as sight-seers from other states, as well as to the citizens of our own State who enjoy the opportunity to view the scenery, which ought to be permitted to them, as a general rule, when travelling along the highways of Florida. Of course there would be some necessary exceptions to this general rule.

I think the time has come to make a candid avowal of the right of the legislature to adopt appropriate legislation based upon these so called aesthetic, but really very practical, grounds. We have recognized to some extent in our own decisions the principles just above alluded to in passing upon the validity of municipal zoning regulations. A statute based upon this principle would not necessarily amount to an absolute prohibition of all advertising sign boards.

The location, size and character of the sign should be taken into consideration. As is stated in a brief filed in this case by Mr. Julius F. Stone, Jr., as amicus curiae: "Relief of the eye from irritating color, movement and motif should be as justified before the law as removing disagreeable odors from the nose or disagreeable noises from the ear."

The aesthetic aspect of the question before us is also referred to in the brief filed by Hon. George Couper Gibbs as amicus curiae, who cites General Outdoor Advertising Co. v. Dept. of Public Works, 289 Mass. 149, N.W. 825.

We might observe that the word aesthetic means, inter alia, "pertaining to the beautiful." I realize that if we were to recognize these aesthetic reasons for upholding a statute designed to protect this opportunity for the view of scenic beauty by the travelling public, we might have to overrule, distinguish or modify the principle which has long been recognized by this Court in dealing with the validity of municipal ordinances, and which was first enunciated with reference to the validity of an ordinance regulating billboards, in the case of Anderson v. Shackleford, 74 Fla. 36, 76 So. 343. That case involved an ordinance of the City of Lake City, and that part of the opinion relating to this subject, reads as follows.

"In so far as the city undertakes to regulate the erection or construction of billboards that might be dangerous to the public by falling or being blown down, or constructed of such material and in such manner as to endanger the life or property, or to increase the danger of loss by fire, or to have printed or displayed upon them obscene characters and words tending to injure and offend public morals, it has the

power; *but no attempt to exercise the power of de-priving one of the legitimate use of his property merely because such use offends the aesthetic or re-fined taste of other persons is quite another thing and cannot be exercised under the Constitution forbidding the taking of property for a public use without com-pensation.* See Crawford v. City of Topeka, 51 Kan. 765, 33 Pac. Rep. 476, 20 L.R.A. 692."

Until the holding of this Court on this subject in the case just quoted from, is overruled, it might be contended that we could not consistently uphold this statute upon aesthetic grounds. While this writer is of the opinion that the last clause of the holding above quoted in Anderson v. Shackleford, should be overruled, if necessary to do so here, and if this were done, I think that the parts of this statute here at-tacked could be upheld, there is a distinction between this case and Anderson v. Shackleford. In the latter case we were dealing with the delegated legislative power of a municipality, while here we are dealing with the much broader legislative power of the legis-lature of a sovereign State. The Lake City case might further be distinguished by reason of the peculiar facts of that case.

The National and State Governments have spent millions of dollars in establishing public parks, one of the chief purposes of which was to preserve to the people an opportunity to enjoy the natural beauties and inspiring scenic effects of certain selected areas of this land of ours.

In one of the briefs it is stated, and I think correctly, that Massachusetts amended its constitution in 1918 so as to provide that advertising on private property in public view might be regulated by law, and there-

upon passed a statute giving the State power to regulate or prohibit advertising signs within 300 feet of parks and places of unusual scenic beauty, giving the State authorities power to pass upon the subject matter, size, shape and material of the signs. Arkansas declared by statute in 1925 that: "It is recognized and hereby declared that beauty or surroundings constitutes a valuable property right which should be protected by law." Many of the countries of Europe have long recognized the necessity of measures for the preservation of existing beauties, whether displayed to the eye as objects of art or as natural landscapes.

A statute based upon the principles just discussed would not necessarily outlaw the erection of signs on private property which would not interfere with this opportunity for the view of the natural scenery from the roadway. The statute here under review, or that part of it here under attack, could be upheld by applying the principles just above discussed.

I am therefore of the opinion that in so far as Section 9 prevents the erection or maintainance of all advertising signs within fifteen feet of the outside boundary of the rights of way of all public highways, regardless of the width of such rights of way, or the nature or size of the signs, in so far as public safety is concerned it is in derogation of the rights of private property as guaranteed by our Bill of Rights, and cannot be upheld upon the ground of protecting the public safety; but I think it could be upheld upon aesthetic grounds as hereinabove outlined. I am further of the opinion that if there is any conflict here with the holding in the above quoted case, that

in so far as that case conflicts with the views hereinabove expressed, it should be overruled.

For these reasons I agree to the conclusion reached by Mr. Justice Whitfield, and the consequent judgment of affirmance.

THOMAS, J., concurs.