122 So.2d 611 (1960)
SUNAD, INC., a Corporation Organized and Existing under the Laws of the State of Florida, Petitioner,
v.
CITY OF SARASOTA, a Municipal Corporation of the State of Florida, Respondent.
Supreme Court of Florida.
June 8, 1960.
Rehearing Denied September 20, 1960.
*612 William A. Gillen of Fowler, White, Gillen, Humkey & Trenam, Miami, and Clyde H. Wilson, Sarasota, for petitioner.
Worth Dexter, Jr., of Dexter, Conlee & Bissell, Sarasota, for respondent.
E. Snow Martin, of Bryant, Martin & Kibler, Lakeland, for Citrus Advertising Company, Lakeland, Florida, amicus curiae.
Fred R. Stanton, of Copeland, Therrel, Baisden & Peterson, Miami Beach, for Donnelly Advertising Corporation, Miami, Florida, amicus curiae.
Sam T. Dell, Jr., of Lazonby, Dell, Graham & Willcox, Gainesville, for Shands Poster Service, Gainesville, Florida, amicus curiae.
*613 John A. Paul, of Warwick, Paul & Warwick, West Palm Beach, for Zimmer Advertising, Inc., West Palm Beach, Florida, amicus curiae.
THOMAS, Chief Justice.
We assumed jurisdiction of this litigation on petition for certiorari because of the apparent conflict between the decisions of the district court of appeal in the present litigation and of this court in Anderson v. Shackleford, 74 Fla. 36, 76 So. 343, L.R.A. 1918A, 139, or so much of them as dealt with the factor of aesthetics in deciding whether or not there could be interference with the use of private property in the interest of the public welfare. On this subject the district court of appeal followed our opinion in City of Miami Beach v. Ocean & Inland Co., 147 Fla. 480, 3 So.2d 364, and later related decisions. A present consideration of the two cases cited and a study of the factual situation in the immediate controversy will develop the question of jurisdiction and lead to a determination of the main issue decided by the circuit court and the district court of appeal.
The former opinion was adopted by the court in 1917, the latter in 1941. It seems fitting, before analyzing them, to bring to mind the enormous metamorphoses in the economy and the industry of the state in the intervening years. True, the constitutional guaranties with reference to the enjoyment of property should remain stable but it is equally true that they are not so rigid that they should not, within the realm of reasonableness, bend to accommodate the public welfare, the well-being of the whole people.
In order to get a true picture of the points in dispute we should outline the facts in the case first cited which we shall hereafter call the Anderson case. There was an ordinance in the city of Lake City prohibiting the use of a billboard higher than six feet within 10 feet of a sidewalk without permission of the city council "in each specific case," and forbidding the use of a wall as a billboard.
A warrant had been issued for the arrest of the plaintiff in error charging him with construction of a sign in violation of the ordinance, and upon his conviction he was sentenced to pay a fine. The plaintiff in error refused to comply with the sentence whereupon, though no alternative sentence to jail had been imposed, he was placed under arrest. The court commented that there was no showing in the record of the existence of an ordinance requiring the marshal to take into his custody anyone failing to pay a fine and no "pretense" that the plaintiff in error was held under a commitment, capias or sentence of imprisonment. Even assuming, said the court, that the act of the plaintiff in error constituted a violation of the ordinance the detention was unlawful.
Although it seemed unnecessary to a decision of the controversy, the court discussed the provisions of the ordinance making the significant observation that "the affidavit wholly failed to charge the defendant with the violation of any provision of the ordinance." Despite the lack of power in the marshal to restrain the plaintiff in error of his liberty without commitment, capias or sentence and the remark of the court that there was a total failure to charge the plaintiff in error with infraction of any provision of the ordinance, the court explored the inhibitions of the ordinance itself and concluded with the statement, which appears to have been pure obiter dictum, that the city had no power to deprive an owner of the legitimate use of his property because such use offended the aesthetic or refined taste of other persons.
Lifting this statement out of context, taking it for face value and disregarding its gratuitous character, it conflicts not only with the decisions of the district court of appeal but also with the ruling of this court in City of Miami Beach v. Ocean & Inland Co., supra, upon which that court based its conclusion on this phase of the *614 controversy, namely that construction of buildings in areas of a certain character could be restricted by zoning ordinance because of the necessity to the welfare of the people to maintain aesthetic appeal.
So the apparent inconsistency in the language of the two cases justifies the exercise of our jurisdiction under Sec. 4, Art. V of the Constitution, as amended 6 November 1956, F.S.A.
With that preface we approach a solution of the problems confronting us in the immediate controversy.
The petitioner is a corporation engaged in the business of building, maintaining and leasing to advertisers billboards of 300 square feet on which are placed lithographed advertising panels. The dimensions of the billboards are said to be standard throughout the United States, thereby making possible the preparation of the posters in large quantities at resultant reduced costs.
The respondent enacted an ordinance limiting the size of signs in business and industrial districts and putting them in two classifications denominated "point of sale" and "non-point of sale." In the first class, wall signs were unlimited in size. In the second class, wall signs were limited to 300 square feet and all others to 180 square feet.
The chancery court held the ordinance discriminatory and unreasonable. On the basis of aesthetics, thought the court, there could be found no reason to single out one type of sign "to make all the sacrifices while other types * * * [could] be of almost unlimited size," and one owner should not be permitted to maintain a sign of unlimited size while another owner would be restricted to a sign much smaller. It is plain from the very terms of the ordinance that at the point of sale the wall sign could be of any size desired, but all other signs could be but 180 square feet, while at another place a wall sign could be only 300 square feet and roof and other signs only 180 square feet.
It should be noted, however, that the chancery court concluded that the City of Sarasota was of the same character as the City of Miami Beach; that it was a center of culture and beauty and, therefore, that aesthetics was a factor properly to be considered. The district court of appeal likewise opined that there was abundant evidence to support the view that the respondent was entitled to take into account the beauty of the community in exercising its police powers.
In substance, then, the chancery court and the district court of appeal concurred in the thought that aesthetic considerations could be just cause for regulating signs in Sarasota inasmuch as the city was of the same character as Miami Beach, to which we applied the rule in the Ocean & Inland case. We agree with them and re-announce what was written in that respect in the Ocean & Inland case and related cases, Merritt v. Peters, Fla., 65 So.2d 861, International Company, Inc. v. City of Miami Beach, Fla., 90 So.2d 906, Dade County v. Gould, Fla., 99 So.2d 236, notwithstanding the gratuitous expression in the Anderson case.
This controversy devolves, then, into the question whether or not the ordinance operates to put the petitioner out of business, or so to cripple its business, as to amount to an unreasonable and discriminatory invasion of its rights, hence an exercise of the police power which aesthetics do not warrant. Bearing in mind that aesthetics is the criterion by which the merits of the ordinance should be judged, we find insurmountable difficulty to a decision that a wall sign 300 square feet in size at non-point of sale would not offend while a sign of the same size on one of petitioner's billboards would, or that an unrestricted wall sign, at point of sale, would be inoffensive but one of petitioner's signs would shock refined senses, or for that matter, that a roof, *615 ground, or other sign could be only 180 square feet while a wall sign could be at least 300 square feet and, if at point of sale, unlimited. And these disparities and comparisons are further accentuated by a provision in the ordinance that the roof signs may be measured "on a cross sectional basis or skeletonized for the purpose of determining the maximum square feet allowed." This language is to this writer a bit obscure, but it evidently means that the peripheral measurement may be unlimited so long as the total square footage of the letters in such signs does not exceed 180.
We reiterate what was written in the Ocean & Inland case and allied cases about regard for aesthetics being proper in situations such as were discussed there, and we recognize the conflict between those pronouncements and the flat declaration in the Anderson case. This means that we recede from so much of the opinion in the Anderson case as is inharmonious with our later expressions.
We agree that the City of Sarasota is reasonably placed in the same category as Miami Beach so far as its appeal on the ground of attractiveness is concerned. But we do not concur in the view that the ordinance under attack defines a pattern calculated to protect and preserve the city's beauty. It is, in our opinion, unreasonable and discriminatory and for those reasons invalid.
We purposely disregard the question involving the validity of the parts of the ordinance treating of the combustibility of the sign boards because we think that our conclusion about the constitutionality of the restrictive provisions makes such a decision unnecessary. In truth, the petitioner has told us in its brief that this feature was being only briefly mentioned to avoid any contention that it had been abandoned.
We conclude that the decision of the district court of appeal should be quashed with directions to enter a judgment consonant with that of the chancery court.
TERRELL, HOBSON and ROBERTS, JJ., concur.
DREW, THORNAL and O'CONNELL, JJ., dissent.
THORNAL, Justice (dissenting).
I dissent for the reason that in my view there is no conflict of opinions within the contemplation of the Constitution to support this Court's jurisdiction. If we had jurisdiction I would concur in the disposition of the merits of the case as announced by the majority. I do not feel that there is a conflict in the constitutional sense because the alleged conflicting statement in Anderson v. Shackleford, 74 Fla. 36, 76 So. 343, L.R.A. 1918A, 139, is purely obiter dictum and not a prior adjudication of a point of law.
DREW and O'CONNELL, JJ., concur.