HOBSON, Justice (Ret.)
(dissenting).
The order of the District Court which is sought to be reviewed by petition for certio-rari on the theory of conflict is as follows:
“PER CURIAM. Affirmed. See Kanter v. Safran, Fla., 1953, 68 So.2d 553.”
One of the District Court Judges, Associate Judge Odom, wrote a dissenting opinion in which he concluded that Kanter v. Safran, supra, does not control the instant case.
I believe that the dissenter was correct because the only pronouncement in Kanter which could possibly control the pivotal point in this case was obiter dictum.
I quote the only paragraph to which the majority of the judges of the District Court could have intended to make reference:
“It should be noted that, in the absence of an express stipulation, it will not be presumed that ‘liquidated damages’ include rents which have accrued at the time the lease is terminated, ¿ince such are capable of exact ascertainment at any time the forfeiture might be declared. They are, moreover, in the nature of a debt, rather than damages, which have been defined as ‘the pecuniary compensation, recompense or satisfaction for an injury sustained.’ 8 R.C. L. 420, cited in Smith v. Navarro, Tex. *539 Civ.App., 69 S.W.2d 794, in which this same conclusion was reached.”
In this case, as in Mangus v. Present, Fla., 135 So.2d 417, I must state that “it is difficult to pinpoint a ‘real and embarrassing conflict’ with a decision of this court or of another district court of appeal.” However, I am of the view that since this Court has denied the petition for certiorari now under consideration, regardless of our pronouncement in Southern Bell Tel. & Tel. v. Bell, 116 So.2d 617, to the effect that denial of certiorari is not to be construed as a decision upon the merits, almost every lawyer in the future who might examine the file in this case and our statement (obiter dictum) in the first of the two Kanter cases will reach the conclusion that this Court has placed its stamp of approval upon this incidental observation as a fixed rule of law in this jurisdiction. This is so because the decision of the District Court of Appeal in the instant case will remain the decision of that Court just as it would have had there been no petition for certiorari lodged in the Supreme Court of Florida.
Everyone knows that a statement made in an opinion which is merely obiter dictum does not constitute in truth and in fact a rule of law. Yet we, by denying this petition, are permitting the District Court to rely upon it as though it were the settled law. No court is bound by obiter dictum, including the appellate court which expressed or uttered such collateral opinion. When a court indulges in obiter dictum such gratuitous statement does not deserve the status of an established rule of law, but it might create confusion. See Sunad, Inc. v. City of Sarasota, Fla., 1960, 122 So.2d 611.
When a statement of the law which is nothing more nor less than obiter dictum is made without the benefit of briefs and argument, it should never be considered as having been elevated to the level of a rule of law for guidance of the bench and bar. Nevertheless, it can and under the circumstances of this case I think it will create doubt and confusion with reference to the case law of this sovereign State.
The basic, underlying purpose envisaged by the people in approving Amended Article V was, obviously, to reduce the appalling burden upon this Court and to make of it, in effect, a rule[1] making tribunal acting “as a supervisory body in the judicial system for the State- * * * Ansin v. Thurston, Fla., 101 So.2d 808. In other words, this Court is, as I see it, charged with the duty of dispelling or avoiding confusion in the case law of Florida. See DuPont Plaza, Inc. v. Dade County, Fla., 125 So.2d 564. Under the plan of Amended Article V of our Constitution, this Court possesses the power to chart, indeed it is charged with the duty of charting, the course of our ship of State insofar as the judicial branch of government is concerned. Moreover, we should see to it that an even keel is maintained and that the log show no departure from the prescribed path to the end that there be uniformity and consistency in the law. The aforementioned fundamental purpose compels me to say that under the circumstances of this case, or under the facts of others which might arise, the confusion, which is created as to the proper rule of law to he applied, is under the provisions of Article V, Section 4 of our Constitution the equivalent of a direct conflict upon which this Court can properly entertain jurisdiction.
The fine line of distinction, if indeed there is any, between confusion and conflict is more than difficult to establish. However, since, as we held in Sunad, Inc. v. City of Sarasota, Fla., 1960, 122 So.2d 611, obiter dictum which creates uncertainty and confusion in the case law of Florida may be a basis for the exercise of our jurisdiction on the conflict theory, the conclusion is inevitable that we should, for the sake of consistency and uniformity, here and now hold that we may exercise our jurisdiction to avoid confusion in the law in those cases *540 where there appears to he a real and urgent reason to clear up such confusion in order to promote the efficient administration of justice and provide stability and certainty in the law. The reference in the per curiam majority opinion to the Kantor case is highly significant. All of us know from years of experience as lawyers and judges that such reference, left standing, will create continuing confusion in the law. It is interesting to note that Associate Judge Odom in his dissent states that the obiter dictum in Kanter is “persuasive.”
Obviously, the majority of the Judges of the District Court of Appeal considered it controlling.
With this thought in mind, I think we should lay at rest the doubt or confusion which inevitably will result by denial of this petition for certiorari. It is my conclusion that this Court has jurisdiction in this cause.
I turn now to the merits of this case.
The real question to be decided is clearly stated by Associate Judge Odom in his dissenting opinion. The query is, and I quote, “Where a lease provides that the premises built upon lessor’s land by the lessee plus the personal property located therein, shall, in the event of termination of the lease because of lessee’s default, pass to and become the property of the lessor, not as a penalty or forfeiture but as liquidated damages, is the lessor, upon default by the lessee, entitled to recover for rent, taxes and insurance due at the time of the default or is lessor’s recovery limited to the liquidated damage provision of the lease?”
I have decided that I can do no better than adopt as my own the excellent dissenting opinion prepared by Associate Judge Odom which will be found in Fla.App., 124 So.2d 503.
I might add that it does not comport with my concept of justice that a lessor should, upon default on the part of the lessee, be permitted “to have his cake and eat it too.” Moreover, men who are sui juris and deal at arms length should, in the absence of fraud, he bound by their lease agreements which expressly provide for liquidated damages as distinguished from a penalty or forfeiture and which recognize initially, and declare, that damages cannot be readily ascertained or determined in futuro. The security deposit clause of the lease in the instant case contains these agreements but they were not, or at least the latter agreement which recognizes the “impossibility of precisely ascertaining the amount of damages that will be sustained by the Lessors in consequence of such default” was not written into the lease in Stenor v. Lester, infra, or Kanter v. Safran, supra. Undoubtedly, the security deposit clause in the lease herein involved was prepared for the express purpose of avoiding the impact of our earlier decisions beginning with Stenor, Inc. v. Lester, Fla., 58 So.2d 673. Moreover, it should be borne in mind that the covenants in the security clause of the lease in this case differ materially, as hereinabove expressly noted, from those, or at least one of those, in the lease in Kanter v. Safran, supra. Because of this fact, the pronouncement of law by way of obiter dictum in Kanter might well have been sound had the question herein actually been presented in that case. Consequently, I would not recede from the critical statement in Kanter but rather simply declare it to be exactly what it is — obiter dictum.
A lessor who requires by solemn agreement that a security deposit be for liquidated damages and not as a penalty or forfeiture has within his power the right to “clamp down” on the lessee upon the first default of any character. Consequently, it must be assumed that if he permits subsequent defaults he does so because he realizes his security deposit which he has the right to retain in toto is adequate protection. In this case, there can be little doubt that the lessor made his election to permit more than one default with assurance that he would lose nothing nor be damaged in any manner by so doing.
ROBERTS, C. J., concurs.

. I mean by this rules of law as distinguished from rules of procedure.