WILLIAMS, O. EDGAR, Jr., Associate Judge.
The Appellant, the City of Sarasota, the defendant below, seeks review of a declaratory decree holding one paragraph of its sign ordinance unconstitutional. The Ap-pellee, Sunad, Inc., the plaintiff below, is a corporation engaged in the business of building, maintaining and leasing to advertisers billboards of 300 square feet on which are placed lithographed advertising panels. The dimensions of the billboards are said to be standard throughout the United States, thereby making possible the preparation of the posters in large quantities at resultant reduced costs.
The parties have been before this court before on an appeal from a previous decree holding -the appellant City’s former sign ordinance unconstitutional. City of Sarasota v. Sunad, Inc., Fla.App.1959, 114 So.2d 377. In the former appeal the City of Sarasota had enacted an ordinance limiting the size of signs in business and industrial districts and putting them in two classifications denominated “point of sale” and “non-point of sale.” In the first class, wall signs were unlimited in size. In the second class, wall signs were limited to 300 square feet and all others to 180 square feet. The chancery court had held the ordinance to be discriminatory and unreasonable. On that appeal, the chancery court was reversed by this court, but on certiorari the Supreme Court reversed the decision on appeal and reinstated the original decree holding the ordinance unconstitutional. Sunad, Inc. v. City of Sarasota, Fla.1960, 122 So.2d 611. The Supreme Court decision set forth the following deficiencies in the former ordinance :
“This controversy devolves, then, into the question whether or not the ordinance operates to put the petitioner out of business, or so to cripple its business, as to amount to an unreasonable and discriminatory invasion of its rights, hence an exercise of the police power which aesthetics do not warrant. Bearing in mind that aesthetics is the criterion by which the merits of the ordinance should be judged, we find insurmountable difficulty to a decision that a wall sign 300 square feet in size at non-point of sale would not offend while a sign of the same size on one of petitioner’s billboards would, or that an unrestricted wall sign, at point of sale, would be inoffensive but one of *13 petitioner’s signs would shock refined senses, or for that matter, that a roof, ground, or other sign could be only 180 square feet while a wall sign could be at least 300 square feet and, if at point of sale, unlimited. And these disparities and comparisons are further accentuated by a provision in the ordinance that the roof signs may be measured ‘on a cross sectional' basis or skeleton-ized for the purpose of determining the maximum square feet allowed.’ This language is to this writer a bit obscure, but it evidently means that the peripheral measurement may be unlimited so long as the total square footage of the letters in such signs does not exceed 180. '
* * * * ‡ *
“We agree that the City of Sarasota is reasonably placed in the same category as Miami Beach so far as its appeal on the ground of attractiveness is concerned. But we do not concur in the view that the ordinance under attack defines a pattern calculated to protect and preserve the city’s beauty. It is, in our opinion, unreasonable and discriminatory and for those reasons invalid.”
After this previous litigation the City of Sarasota amended its sign ordinance so that at the time the chancellor rendered the decree now appealed, the ordinance provided substantially the same two basic classifications ; Class “A” including all signs advertising a product for sale or a service to be rendered on the immediate premises where the sign is located, and Class “B” including all signs advertising a product for sale or a service to be rendered at a location other than the premises on which the sign is located. In the section held unconstitutional by the lower court, both Class “A” signs and Class “B” signs were limited in size to a “surface or facing” not exceeding 180 square feet in the business districts specified therein. The amended ordinance also prohibited the location of any Class “B” sign within 25 feet of any other Class “B” sign, except for “V-type” signs of the type designed to display two advertising faces to be read from different vantage points. It also had a phase-out provision permitting non-conforming signs to continue for not longer than five years after its adoption on October 1, 1962.
It would appear that the new ordinance now being considered eliminated a portion of the features of the former ordinance found unreasonable and discriminatory by the Supreme Court, but not all of such features. The findings of the chancellor in the decree now being reviewed were as follows:
“1. The testimony before this Court disclosed a situation in many respects similar to the previous findings of another Circuit Judge of this Circuit in Sunad, Inc., vs. City of Sarasota, Case No. 11,276, which was affirmed on Certiorari by the Supreme Court of Florida in Sunad, Inc. vs. City of Sarasota, 122 So.2d 611, in that:
“(a) While it is true that Sarasota is one of a class of cities that could enact sign regulations based on aesthetics, yet no pattern of aesthetic control reasonably calculated to protect and preserve the City’s beauty is shown.
“(b) While prohibiting 300 sq. ft. signs such as is used by Plaintiff unrer stricted grouping of Class “A” signs are permitted, unrestricted grouping q£wall signs are permitted and wall signs ■ greatly larger than 300 s'q. ft. are permitted up to a five (5) year period.
“2. During the course of the litigation this Defendant, amended its sign ordinances by the enactment Ordinance No. 1254 and Ordinance No. 1255, the former extending for useful life not to exceed five (5) years the life of nonconforming signs existing on said date and the latter prohibiting grouping of Class “B” signs nearer than 25 ft. with the exception of double faced signs; it was shown that Sunad, Inc. could *14 get-no benefit from the five (5) years provision for the reason that its signs had not been permitted and are not in these areas and that the grouping limitation as to Class “B” signs left undisturbed the unlimited grouping of Class “A” signs and wall signs; it is the opinion of this Court that these Amendments did not alleviate the discrimination shown by Paragraph #7 of Ordinance No. 1204 as against Sunad, Inc.
“3. That the areas of the City of Sarasota involved in this cause was limited by amendment of the Plaintiff to the BB, BB-1 BB-2, and BB-3 Business Districts as referred to in Paragraph 7 of Ordinance No. 1204; and it follows, therefor that the principal issue was the validity of Paragraph 7 of said ordinance as related to the other existing sign ordinances of the City of Sarasota in its exclusion of 300 sq. ft. signs, such as Plaintiff was shown to use in its business, while permitting larger signs, and virtually unrestricted grouping of signs.
“4. That Paragraph 7 of Ordinance No. 1204, which prohibits signs in areas designated BB, BB-1, BB-2, and BB-3, the erection and maintenance of Outdoor Advertising displays or signs of the character and size shown to be erected by the Plaintiff herein, is an unreasonable, arbitrary, discriminatory, and unlawful exercise of the power of the City of Sarasota to pass reasonable zoning regulations in'its application to the Outdoor Advertising Business of the Plaintiff; that size alone is not determinative of and does not create an aesthetic pattern, altho it is a factor to be considered; that the exclusion of outdoor advertising displays of the nature, size and character of those shown to be constructed and maintained by the Plaintiff, which is the customary and usual size used all over the United States in the poster panel outdoor advertising business while permitting numerous types of business and outdoor advertising displays to be conducted without limitation, and to permit outdoor advertising displays of virtually unlimited size, if they constitute a skeletonized sign or grouping of smaller signs, and certain wall signs, for up to a five year period, does not create a pattern of aesthetic control, belies any reasonable predicate for such exclusion and such attempted exclusion by the City of Sarasota constitutes an unreasonable and arbitrary exercise of the City powers to pass zoning regulations in furtherance of the public health, morals, aesthetics, or general welfare.”
Although both Class “A” signs and Class “B” signs in the new ordinance are equally limited to a maximum of 180 square feet of “surface or facing,” which would prohibit appellee’s 300 square foot signs, still it allows “skeletonized” signs of unlimited peripheral measurement so long as the total square footage of the letters in such signs does not exceed 180. Again, bearing in mind that aesthetics is the criterion by which the merits of the ordinance should be judged, it is difficult to envision how one of appellee’s 300 square foot signs would be offensive and yet a “skeletonized” sign of much greater peripheral measurement would not be offensive. This is equally true of the restriction requiring Class “B” signs to be at least 25 feet apart (except for “V-type” signs) in view of the fact that grouping is completely unrestricted for Class “A” signs. Certainly, a “grouping” of Class “A” signs which grouping has an overall peripheral measurement of 300 square feet may well be as offensive aesthetically as one 300 square foot sign. It appears, therefore, that the new ordinance is still unreasonable and discriminatory in the sense of the 'pronouncement of our Supreme Court on the former ordinance, and that it still does not “define a pattern calculated to protect and preserve the city’s beauty.” We feel that the chancellor was correct in declaring the *15 questioned paragraph of the ordinance unconstitutional under the guidelines specified by our Supreme Court.
The final decree is affirmed.
ALLEN, C. J., and ANDREWS, J., concur.