## CIRCUIT COURT OF THE CITY OF RICHMOND

Albert S. Lanigan and
Robert W. Martin

v.

City of Richmond, Department of Public
Safety Bureau of Building Inspection

September 18, 1978

Case No. A-496-C

By JUDGE MARVIN F. COLE

The above case was heard before the court on June 14, 1978. Robert W. Martin testified that he leased from Albert S. Lanigan the real estate known as 107 E. Belt Boulevard, Richmond, Virginia, which is located in an area zoned B-3 (business).

Martin as a hobby owns vintage automobiles which he has parked in front of a single family dwelling located on the premises for the purpose of restoring the vehicles. There are thirteen vehicles in the front yard that are not licensed and are not operable. There are four cars that have been restored, inspected and licensed located on the premises. The evidence is to the effect that Martin has never sold a car from the premises nor has he sold parts off of them.

Section 32.1-438.1 of the City Code provides as follows:

The following uses of buildings and premises shall be permitted in the B-3 General Business District:

(2) Auto, truck, motorcycle, boat and trailer sales, rental, service, storage, general repair, body repair and painting and convertible tops and seat cover repair and installation provided that . . .

(b) All facilities involving general repair, body repair and painting and convertible top and seat cover repair and installation shall be located within completely enclosed buildings.

(c) No dismantled or junked vehicle unfit for operation on the street shall be parked or stored outside of an enclosed building.

Martin was charged with a violation of the City ordinance. He applied to the Commissioner of Buildings for a Certificate of Occupancy, but the application was rejected, thus giving Martin a basis for an appeal to the Board of Zoning Appeals.

The Board of Zoning Appeals considered the matter on May 4, 1977, and granted a conditional variance. The Board adopted a resolution granting the request for a variance from the use regulations for a certificate of occupancy for restoration and storage of vintage autos, not to include body repairs and painting, on the condition that the variance be restricted to the applicant only, that such activity not be conducted as a commercial enterprise and that the activity be restricted to the side and rear yard areas of the property and be screened from view from the street and from abutting properties by opaque fencing not less than 6 feet in height.

The decision of the Board of Zoning Appeals was appealed to this Court (Division I) and the decision was sustained and the order is now final.

Thereafter, this suit was filed in Division II of this court praying that the Court adjudicate that Section 32.1-438.1 of the City Code is invalid as applied in this case and is invalid on its face, and adjudicate that the action of the defendant in restricting the use of the plaintiffs of their property is confiscatory and contrary to law, and therefore unreasonable, arbitrary and capricious.

In their Memorandum of Law in support of the Amended Motion for Declaratory Judgment, the plaintiffs state

two grounds upon which they base the invalidity of the ordinance. They are as follows.

1. Ordinances passed by the City Council must be consistent with the laws of Virginia. Virginia Code Section 15.1-11.1 states that a city may by ordinance require enclosing or removal of any motor vehicle "whose condition is such that it is economically impractical to make them operate." Since this provision is not included in the zoning ordinance 32.1-438.1, then the State law and City ordinance are inconsistent and therefore the State law prevails and the City ordinance is invalid.

2. The City ordinance 32.1-438.1 bears no reasonable or substantial relation to public health, safety or welfare, and that the City can not restrict the use of a person's property under the guise of its police power where such power is justified solely on aesthetic considerations, and therefore the ordinance is invalid.

The Court will address itself first to Point I set out above. Section 15.1-11.1 grants authority to counties, cities and towns to restrict keeping of inoperative motor vehicles on residential or commercial property and grants authority for removal of such vehicles. However, the City of Richmond has additional powers and authority granted to it in Title 15.1 in matters regarding planning, subdivision of land, and zoning matters. Chapter 17 of the Charter of the City of Richmond grants additional powers over matters of planning and zoning. Therefore, the police power of the City of Richmond in matters of zoning is not limited by Section 15.1-11.1 of the Code. Therefore, there is no inconsistency between the zoning laws of the City and Section 15.1-11.1 of the State, and there is no merit in Point No. 1.

In regard to Point 2 set forth above, the position of the plaintiffs is that the City ordinance has nothing to do with promoting the health, safety and general welfare of the public, but is for purely aesthetic considerations, and is therefore invalid. The plaintiffs cite *Peck* v. *Kennedy, Zoning Admr.*, 210 Va. 60 (1969), in support of the generally accepted rule that a state, municipality or county cannot limit or restrict the use which a person may make of his property under the guise of its police power where the exercise of such power would be justified solely on aesthetic considerations.

In the *Peck* case the Supreme Court, however, went further and stated that aesthetic considerations are not wholly without weight and need not be disregarded in adopting legislation to promote the general welfare. Such will not invalidate an ordinance if other elements within the scope of the police power are present.

Mr. Jon P. Weersing, an employee in the Department of Planning of the City of Richmond, testified that the primary purpose of the ordinance was not aesthetic considerations, but that the primary purpose was to protect property values in the area. He stated that experience had shown that dismantled vehicles and junked vehicles parked outside of enclosed buildings tended to lower property values and that it impaired investment in the area by those who wished to invest in businesses in the area. He further testified that such vehicles located outside in a B-3 (business) area inhibited the primary use of the area by the public, which was retail in nature. All of this tended to lower property values in the area, which in turn had an adverse effect upon the City tax base. He further testified that all persons were treated alike in regard to enforcement of this ordinance.

The Court is familiar with this area and this particular location, having driven by it on innumerable occasions. The plaintiffs have referred 'to the numerous cars located in the front yard of 107 E. Belt Boulevard as vintage cars. The court is of the opinion that a vast majority of the public would refer to them as junked cars, constituting a severe eye sore in the area. There can be no question but that this location as now maintained has a detrimental effect on property values in the immediate area.

In 58 A.L.R.2d, page 1327, there is an annotation concerning aesthetic considerations in billboard cases involving municipal regulations. The following is stated:

> There is a growing tendency to give greater weight to aesthetic considerations in cases challenging the validity of ordinances prohibiting or regulating billboards and outdoor advertising and connected activities, although probably no case has yet gone to the length of sustaining an ordinance or ruling solely upon the ground

that a purpose to further an aesthetic project or plan, without move, is sufficient to overcome objections to its validity.

There are many decisions, however, that an aesthetic purpose may properly be considered as a large if not a major influence in such cases, and this has been held in the following (citing cases).

This annotation was written in 1958. Since then at least one court has gone the last mile. In *Rotenberg* v. *City of Fort Pierce*, 202 So. 2d 782, the court said that aesthetics have been held a valid basis for zoning in Florida.

This Court is of the opinion that the New York case of *People* v. *Stover*, 191 N.E.2d 272, is determinative of this case. In 1961 the City enacted an ordinance prohibiting the erection and maintenance of clotheslines or other devices for hanging clothes or other fabrics in a front or side yard abutting a street. The ordinance provided for the issuance of a permit for the use of such clotheslines if there is "a practical difficulty or unnecessary hardship in drying clothes elsewhere on the premises." The owner of the property, Mrs. Stover, was denied a permit and she appealed to the court, claiming invalidity of the ordinance. The court stated the following in its opinion, which this court adopts:

(4) Once it be conceded that aesthetics is a valid subject of legislative concern, the conclusion seems inescapable that reasonable legislation designed to promote that end is a valid and permissible exercise of the police power. If zoning restrictions "which implement a policy of neighborhood amenity" are to be stricken as invalid, it should be, one commentator has said, not because they seek to promote aesthetic objectives" but solely because the restrictions constitute "unreasonable devices of implementing community policy." (Dukeminier, Zoning for Aesthetic Objectives: A Reappraisal, 20 Law & Contemp. Prob. 218, 231) Consequently, whether such a statute or ordinance should be voided

should depend upon whether the restriction was "an arbitrary and irrational method of achieving an attractive, efficiently functioning, prosperous community and *not* upon whether the objectives were primarily aesthetic." (Dukeminier, loc. cit.) And, indeed, this view finds support in an ever-increasing number of cases from other jurisdictions which recognize that aesthetic considerations alone may warrant an exercise of the police power. (See, e.g., *Berman* v. *Parker*, 348 U.S. 26, 33, 75 S. Ct. 98, 99 L. Ed. 27; *General Outdoor Adv. Co.* v. *Department of Public Works*, 289 Mass. 149, 187-188, 193 N.E. 799, app. dsmd. *General Outdoor Adv. Co* v. *Calahan*, 297 U.S. 725, 56 S. Ct. 495, 80 L. Ed. 1008; *Sunad, Inc.* v. *City of Sarasota*, 122 So. 2d 611 (Fla.); *State ex rel Civello* v. *New Orleans*, 154, La. 271, 284-285, 97 So. 440, 33 A.L.R. 260; *Best* v. *Zoning Bd. of Adjustment*, 393 Pa. 106, 116-117, 141 A.2d 606; *State ex rel. Saveland Park Holding Corp.* v. *Wieland*, 269 Wis. 262, 271-272, 69 N.W.2d 217, cert. den. 350 U.S. 841, 76 S. Ct. 81, 100 L. Ed. 750; *Churchill & Tait* v. *Rafferty*, 32 P.I. 580, app. dsmd. 248 U.S. 591, 39 S. Ct. 20, 63 L. Ed. 436; see also 8 *McQuillin, Municipal Corporations* (3d ed.), § 25.31.) As Mr. Justice Douglas, writing for a unanimous court in Berman, put it (348 U.S. at p. 33, 75 S. Ct. at p. 102):

"The concept of the public welfare is broad and inclusive . . . The values it represents are spiritual as well as physical, aesthetic as well as monetary. It is within the power of the legislature to determine that the community should be beautiful as well as healthy, spacious as well as clean, well-balanced as well as carefully patrolled . . . . If those who govern the District of Columbia decide that the Nation's Capital should be beautiful as well as sanitary, there is nothing in the Fifth Amendment that stands in the way."

(5) Cases may undoubtedly arise, as we observed above, in which the legislative body

goes too far in the name of aesthetics (cf. *Matter of Mid-State Adv. Corp.* v. *Bond*, 274 N.Y. 82, 8 N.E.2d 286; *Dowsey* v. *Village of Kensington*, 257 N.Y. 221, 177 N.E. 427, *supra*; Dukeminier, *Zoning for Aesthetic Objectives: A Reappraisal*, 20 Law & Contemp. Prob. 218, 231) but the present, quite clearly, is not one of them. The ordinance before us is in large sense regulatory rather than prohibitory. It causes no undue hardship to any property owner, for it expressly provides for the issuance of a permit for clotheslines in front and side yards in cases where there is practical difficulty or unnecessary hardship in drying clothes elsewhere on the premises. Moreover, the ordinance imposes no arbitrary or capricious standard of beauty or conformity upon the community. It simply proscribes conduct which is unnecessarily offensive to the visual sensibilities of the average person. It is settled that conduct which is similarly offensive to the senses of hearing and smell may be a valid subject of regulation under the police power (see e.g. *People* v. *Rubenfeld*, 254 N.Y. 245, 172 N.E. 485, *supra*), and we perceive no basis for a difficult result merely because the sense of sight is involved.

The Court therefore is of the opinion that Section 32.1-438.1 of the Code is valid on its face and is likewise valid as applied in this case to the plaintiff.