### CITY OF PEMBROKE PINES v. KLEIN.
No. 79-170 M040.
Circuit Court, Broward County.
May 1, 1979.

Steven L. Josias, City Counsel, Allen S. Parish, Assistant City Counsel, for the plaintiff.

Stephen A. Longo of DeTardo & Longo, Hollywood, for the defendant.

MORTON L. ABRAM, County Court Judge.

Defendant was charged by municipal information with a violation of the Municipal Code, City Ordinance No. 430, Section 46.5, to wit: "Illegal off-premise directional sign advertising." At the hearing, the facts in the case were stipulated to by the attorney for the defendant and the city prosecutor. Defendant erected what is commonly referred to as a directional sign showing the name of some new townhouses together with the address and an arrow pointing in the direction of the development. The sign was erected on an undeveloped area where it would be visible to persons travelling upon either of two thoroughfares at a nearby intersection, and directing the public to the sales office some distance from the sign. Thus it is considered to be an off-premise directional sign as defined by the ordinance. It is agreed that neither of the streets or thoroughfares from which the sign could be observed was of 200 hundred feet or more right-of-way.

The ordinance under which defendant was charged provides in part —

> "Article 46.5 (H)  *Off-premise Directional Signs:* Off-premise project directional signs are permitted only in undeveloped and unplatted zones and are further limited as follows:
>
> 1.  Such signs are allowed only on major arterial thoroughfares of two hundred (200) feet or more right-of-way, including University Drive, Pines Boulevard, Sheridan Street, Pembroke Road and Flamingo Road."

Defendant has challenged the constitutionality of the ordinance as well as its application to the defendant. The basis for his contention is that the ordinance is defective in two respects. First, that there is no valid basis for distinguishing between a developed and platted area upon which no off-premise sign could be erected

regardless of the width of the adjacent thoroughfares, and an undeveloped and unplatted area upon which an off-premise sign may be erected. Second, that there is no valid basis to differentiate between a thoroughfare of 200 feet or more and one which is less than 200 feet.

It is well established that a municipality has the right, under its police powers, to regulate outdoor advertising of all types. This right is limited by the state and federal constitutions to a reasonable relationship between the ordinance and the protection of the health, safety, general welfare or morals of the public.

*In Sunad, Inc. v. City of Sarasota*, 122 So.2d 611 (1960), the Florida Supreme Court accepted jurisdiction based upon a conflict between two prior cases decided by the court — *Anderson v. Shackleford*, 77 Fla. 36 (1917), *and City of Miami Beach v. Ocean and Inland Company*, 3 So.2d 364 (1941). In *Anderson*, the ordinance provided that no billboard higher than 6 feet located within 10 feet of a sidewalk could be erected without specific permission of the city council, and further prohibited the use of any wall as a billboard. As obiter dictum the court held that —

> "The city had no power to deprive an owner of the legitimate use of his property because such use offended the aesthetic or refined tastes of other persons."

However, the court held in *Ocean and Inland*, supra, a few years later, that a property owner may be required to surrender some of his ownership rights when such would be necessary for the welfare of the public. Here, the city of Miami Beach established building restrictions on Lincoln Road by which only multiple dwellings or non-commercial use would be permitted. The court held —

> "It is fundamental that one may not be deprived of his property without due process of law, but it is also well established that he may be restricted in the use of it when that is necessary to the common good. So in this case we must weigh against the public weal plaintiff's rights to enjoy unhampered property acquired since the enactment of the ordinance. Such restrictions must have its basis in the safety, health, morals or general welfare of the community."

Reiterating its position in *Ocean and Inland* and holding that aesthetics could, under certain circumstances, form a sufficient basis for an exercise of police power, the court nevertheless found the subject ordinance, invalid as unreasonable and discriminatory—

> "Bearing in mind that aesthetics is the criteria by which the merits of the ordinance should be judged, we find

insurmountable difficulty to a decision that a wall sign 300 square feet in size at non-point of sale, would be inoffensive but one of the petitioner's signs would shock refined taste, or for that matter, that a roof, ground or other sign could only be 180 square feet while a wall sign could be at least 300 square feet and, if at point of sale, unlimited."

Thereafter the city enacted a new ordinance establishing two classes of signs, point-of-sale signs and non-point-of-sale. Signs in either class could not exceed 180 square feet in specified business areas and non-point-of-sale signs would be allowed for skeletonized sign measurements, grouping of smaller signs and a five-year phase out for certain types of signs. The Second District Court of Appeal in *City of Sarasota v. Sunad*, 181 So.2d 11 (1965), held this ordinance to be unreasonable and discriminatory in the sense of the pronouncement of the Supreme Court on the former ordinance, and that it still did not "define a pattern calculated to protect and preserve the city's beauty."

Also, in *City of Naples v. Polk*, 342 So.2d 1076 (2d D.C.A. 1977), the court held that an ordinance prohibiting all off-site signs was invalid, citing the *Sunad* cases.

It is well established that municipal ordinances are subject to the limitations and restrictions of the federal and state constitutions. 23 Fla. Jur. 148. This court is fully cognizant of its responsibility to construe or interpret any statute or ordinance to save it from constitutional infirmity. "Substantive Due Process," 21 Univ. Miami Law Review 100. See *Redwing v. Mason*, 117 So.2d 465 (1965). Likewise, a court cannot determine the constitutionality of a law on the basis of philosophical predeliction or the apparent wisdom of a particular law. 10 Fla. Jur. 2d, 281 at 282. The city has a right, pursuant to its police powers, to regulate billboards and outdoor signs if there is a reasonable relationship in the ordinance to health, safety, general welfare or morals of the public. 7 McQuillin Municipal Corporations, 324 ff. But the ordinance must be clear on its face that there is such a relationship, for if it is not so clear as to be fairly debatable, the court cannot substitute its judgment for the wisdom of a legislative body in order to overcome the presumption of legislative validity. 21 Univ. of Miami Law Review 132 at 139 (1966-67) "Equal protection in Florida Constitutional Law," also, *Town of Bay Harbor Islands v. Burk*, 114 So.2d 225 at 228 (3rd D.C.A. 1959).

Counsel for the city argues that the city may regulate signs solely on the basis of aesthetics, and that the ordinance must be sustained if the issues are fairly debatable, citing *Elliot Advertising*

*Company v. Metropolitan Dade County*, 425 F.2d 1141 (5th Cir. Ct. App. 1970), certiorari dismissed, 400 U.S. 805, 27 L.Ed. 2d 35, 91 S.Ct. 12 (1970), wherein the court held that an ordinance prohibiting commercial signs while allowing point-of-sale signs visible from the highway or expressway was constitutionally permissible. Counsel for the city also emphasizes that off-site directional signs are allowed on major thoroughfares "where people need and are seeking directions."

The ordinance sub judice has two main limitations upon the erection of off-premise directional signs. One is that a developer, builder or any person having permission from an owner of property at any distance from the advertised location may erect the sign only if the prospective area on which the sign is to be placed is an undeveloped and unplatted zone, and the other is that said location can only be on a major arterial thoroughfare of 200 feet or more right-of-way, and specifically delineating those thoroughfares which would qualify for the exception.

This means simply that a sign cannot be located on any of the specified thoroughfares if there are no undeveloped or unplatted areas available or which might be of any value or use. Conversely, if the applicant can use an undeveloped and unplatted zone on a suitable location (as sub judice) it is prohibited if it is not on any of the specified thoroughfares.

This court fails to see any logic in the discrimination between an undeveloped and unplatted zone on a major thoroughfare, and one which is not. Neither does the limitation appear to have any basis as to aesthetic appeal. If an off-premise directional sign would not offend the citizens of the community on a major thoroughfare, why would it be offensive on a similar type of a site on a non-major thoroughfare? Nor does there appear to be any basis for the contention that travelers on an arterial or major thoroughfare would need direction in finding a particular development, while a traveler on a non-major thoroughfare would be able to find his way in all cases without the directional sign. The city contends that the ordinance is valid because it has not prohibited all off-premise signs, but simply regulates their location. The regulation has no apparent reasonable relationship to health, safety, general welfare or morals.

Defendant will not be permitted to utilize an adjacent or nearby undeveloped and unplatted area identical in all respects to another area except that it is not on a major arterial thoroughfare of 200 feet or more right-of-way.

To state that anyone who is "earnestly seeking to find defendant's townhouses will surely be able to find them" without an off-premise sign has no apparent rational basis.

Although the court recognizes the principle that wide discretion is vested in the legislative body in making a classification between similarly situated classes of citizens, and the presumption of validity attached thereto, if it appears that the distinction is arbitrary beyond a rational doubt the ordinance must be declared invalid. *Hunter v. Flowers*, 43 So.2d 4335 (Sup. Ct. 1949).

Finally, the city contends that there is a valid and rational difference between on-premise and off-premise signs. Since the question of on-premise signs is not in issue, it is not necessary to consider this point.

Wherefore, this court finds that Article 46.5(H), Section 1 of the ordinance violates the Florida Constitution and the U. S. Constitution, so much of the ordinance as is applicable to the defendant herein must fail. The court grants defendant's motion to dismiss the information herein.