**E. B. ELLIOTT ADV. CO. et al.,**
**Plaintiffs-Appellants,**

**Henry F. Hill, Intervenor-Appellant,**

**v.**

**METROPOLITAN DADE COUNTY, a political subdivision of the State of Florida, Defendant-Appellee.**

No. 27589.

United States Court of Appeals,
Fifth Circuit.

April 3, 1970.

Rehearing Denied April 29, 1970.

---

Kenneth L. Ryskamp, Miami, Fla., Chester Bedell, Jacksonville, Fla., Copeland, Therrel, Baisden & Peterson, Fred R. Stanton, Miami Beach, Fla., for appellants.

Thomas C. Britton, County Atty., St. Julien P. Rosemond, Asst. County Atty., Miami, Fla., for appellee.

Before JOHN R. BROWN, Chief Judge, and TUTTLE and MORGAN, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

This is a consolidated class action seeking a declaratory judgment that Dade County Ordinance No. 63–26, as amended (1968), Code of Metropolitan Dade County, § 33–121.10–17, dealing with the erection and maintenance of outdoor advertising signs adjacent to all expressways in Dade County, is unconstitutional. The District Court for the Southern District of Florida held that the ordinance bears a rational relationship to the constitutionally permissible objectives of safety, aesthetics and economic welfare and does not prescribe the taking of property without just compensation or due process of law, nor constitutes a denial of the equal protection of the law.

Ordinance No. 63–26, enacted on July 2, 1963, establishes "protected areas", which include all property within 600 feet of the right-of-way of all expressways in Dade County, and prohibits all commercial outdoor advertising signs within the

"protected areas", subject to a number of exceptions.[1] "Temporary signs", such as signs advertising the property on which they are located to be for sale or

1. Ordinance No. 63–26 provides:

Dade County Ordinance No. 63–26, Code of Metropolitan Dade County §§ 33–121.-10–33–121.17

(Note: Language added by latter amendments is indicated by bracket; Language deleted is in italics.)

ORDINANCE PROHIBITING COMMERCIAL ADVERTISING SIGNS WITHIN SIX HUNDRED (600) FEET OF THE RIGHT OF WAY LINE OF ANY EXPRESSWAY OR LIMITED ACCESS HIGHWAY, OR RELATED FACILITIES, IN TERRITORIAL AREAS OF DADE COUNTY; PROVIDING EXCEPTIONS; PROVIDING REPEAL CLAUSE; PROVIDING FOR INCLUSION IN CODE; AND PROVIDING AN EFFECTIVE DATE

WHEREAS, the Board of County Commissioners is empowered and authorized to regulate arterial, toll, and other roads, bridges, tunnels, and related facilities, and to develop and enforce master plans for the control of traffic; and to establish, coordinate, and enforce zoning and such business regulations as are necessary for the protection of the public; and to perform any other acts which are in the common interest of the people of Dade County, Florida; and

WHEREAS, the Board of County Commissioners finds, determines and declares that the control and regulation of commercial advertising signs adjacent to expressways, limited access facilities and related approaches, viaducts, bridges and interchanges is necessary for the protection of the public and essential for the common interest, welfare and safety of the residents and visitors of Dade County, Florida,

NOW, THEREFORE, BE IT ORDAINED BY THE BOARD OF COUNTY COMMISSIONERS OF DADE COUNTY, FLORIDA:

Section 1. DEFINITIONS

(a) "Expressway" shall mean limited access rights of way and facilities and related approaches, viaducts, bridges and interchange facilities and service roads, and any portion of the interstate highway system, now existing or as may be later constructed or designated.

(b) "Applicable Regulations" shall mean any pertinent zoning, building or other regulations in effect in the incorporated or unincorporated areas of Dade County of the State of Florida.

(c) "Protected Areas" shall mean all property in Dade County within 600 feet of the right of way of any expressway right of way.

(d) "Sign" shall mean any display of characters, letters, illustrations or any ornamentation designed or used as an advertisement, announcement or to indicate direction.

(e) "Erect" shall mean to construct, build, rebuild (if more than 50% of the structural members involved), relocate, raise, assemble, place, affix, attach, paint, draw, or in any other manner bring into being or establish.

(f) "Temporary Sign" shall mean signs to be erected on a temporary basis, such as signs advertising the sale or rental of the premises on which located; signs advertising a subdivision of property; signs advertising construction actually being done on premises on which the sign is located; signs advertising future construction to be done on the premises on which located and special events, such as public meetings, sporting events, political campaigns or events of a similar nature.

(g) "Point of Sale Sign" shall mean any sign advertising or designating the use, occupant, of the premises, or merchandise or products sold on the premises.

(h) "Outdoor Advertising Sign" shall mean any sign which is used for any purpose other than that of advertising to the public the legal or exact firm name or type of business conducted on the premises, or of products or merchandise sold on the premises; or which is designed and displayed to offer for sale or rent the premises on which displayed, or the subdivision of such premises, or present or future construction or development of such premises, or advertising special events, shall constitute an outdoor advertising sign.

Section 2. APPLICABILITY. This ordinance shall apply to both the incorporated and unincorporated area. Any municipality may establish and enforce more restrictive regulations as such municipality may deem necessary.

Section 3. SIGNS PROHIBITED IN PROTECTED AREAS. It shall be unlawful hereafter for any person, firm or corporation, or any other legal entity to erect, permit or maintain any sign in protected areas, except as provided for hereinafter.

Section 4. EXCEPTIONS. Erection of the following signs shall be permitted in protected areas, subject to the conditions and limitations listed herein and further, subject to other applicable regulations where such regulations are more

restrictive or more definitive than the provisions of this ordinance and are not inconsistent therewith.

(a) *Temporary Signs* which are located and oriented to serve streets other than an expressway, and are located at least 100 feet from the expressway right of way, except that such signs may serve and be oriented to an expressway if the property concerned abuts the expressway right of way and is not served by a parallel expressway service road or is abutting the expressway right of way and has direct, permanent legal access to the expressway. In no event shall any temporary sign be larger than 120 square feet.

(b) *Point of Sale Signs* which are located on and oriented to the frontage on the street which provides actual and direct access to the front or principal entrance of the place of business; [however, on corner lots a second detached point of sale sign will be permitted provided that the same is not larger than 40 square feet, is located on and oriented to the street frontage of the street other than the one serving the principal entrance of the place of business.] (Ordinance No. 64–32, § 1 (1964)). Oriented, in connection with point of sale signs shall mean, in the case of detached signs, placed at a 90° angle to the street being served; in the case of roof signs, parallel to and fronting such street and within the front 25% of the building concerned; and in the case of pylon signs, within the front 20% of the building concerned. *If point of sale signs are to be located within 200 feet of an expressway, such signs shall be limited to the name of a shopping center or the name and type of business or profession of the occupant of the premises.* (Ordinance No. 68–15, § 1, (1968)). Wall signs within 200 feet of an expressway shall be confined to the wall of the building containing the principal entrance, except that a wall sign may be placed on one other wall of such building and shall be limited to 10% of such other wall area, *but in no event shall be larger than 80 square feet.* (Ordinance No. 68–15, § 1). In no event shall any detached point of sale sign be erected within the protected area which is greater in height than 25 feet above the average grade of the premises concerned, and no point of sale roof sign shall be erected which is greater in height above the roof than 10 feet.

(c) *Outdoor Advertising Signs* shall not be erected for the purpose of serving any expressway, and outdoor advertisng signs in protected areas shall be erected and oriented to serve only streets other than expressways, subject to the following conditions:

1. That in no event shall any outdoor advertising sign be erected or placed closer than 200 feet to the right of way lines of any expressway.
2. That outdoor advertising signs shall be erected and placed only in business or commercial (not including industrial) zoning districts which permit outdoor advertising under the applicable zoning regulations of the County or municipality having jurisdiction.
3. That no outdoor advertising sign shall be erected that is larger than 15 feet in width and 50 feet in length, whether single or multiple boards.
4. That no detached outdoor advertising sign shall be erected which is more than 25 feet above the average existing grade of the site on which such sign is erected, or the flood criteria elevation (if property is filled to such elevation) whichever is the greater; nor shall an outdoor advertising roof sign be erected which is more than 20 feet above the roof.
5. That no advertising signs shall be erected or placed within 300 feet of another outdoor advertising sign, such distance to be measured in all directions from the outermost edges of such sign.
6. That no outdoor advertising sign shall be erected or placed within 100 feet of any church, school, cemetery, public park, public reservation, public playground, State or National forest.
7. That outdoor advertising signs shall be erected and placed at right angles to the street which they are serving and shall be located within the front 70 feet of the lot or tract on which erected.
8. That no outdoor advertising signs shall be erected or placed on a street deadended by the expressway, between the expressway and the first street running parallel to the expressway and on the same side of the deadend street, even though such distance may be greater than 200 feet.
9. That outdoor advertising signs shall be erected and placed only on property conforming in size and frontage to the requirements of the zoning district in which located, and detached outdoor advertising signs shall not be erected on property already containing a use or structure.

rent; signs advertising a subdivision of the property; signs advertising construction actually being done on the premises or future construction; or signs advertising special events or political campaigns, are generally allowed if oriented to serve streets other than expressways and located more than 100 feet from the expressway right-of-way. However, "temporary signs" may be oriented to and serve an expressway if the property abuts on the expressway and is neither served by a parallel service road nor has a direct permanent legal access to the expressway. "Point of sale" signs, that is, signs "advertising or designating the use, occupant of premises, or merchandise or products sold on the premises", are allowed if they are directed and oriented to the street which provides access to the premises and meet certain other requirements. A provision limiting the contents of a "point of sale" sign located within 200 feet of an expressway right-of-way to the name of the shopping center or the name and type of business or profession of the occupant of the premises and a provision limiting the size of "point of sale" signs within the 200-foot limit to 80 square feet were deleted on March 5, 1968. Dade County Ordinance No. 68–15, § 1. All other commercial outdoor advertising signs visible from an expressway are prohibited within 200 feet of an expressway right-of-way, and, while allowed within the 600-foot protected area if beyond the 200-foot limit, they must not be erected for the purpose of serving an expressway and must be oriented so as to serve only streets other than expressways and meet other requirements as to size, zoning regulations, construction and spacing. The ordinance further provides that nonconforming signs may continue to be maintained until March 1, 1968, thus providing an amortization period of five years. Viola-

10. That detached outdoor advertising sign structures shall be of the so-called cantilever type construction (double-faced sign, both faces of the same size, secured back to back on vertical supports with no supporting bracing).

[(d) Any sign which fails to conform with the provisions of this division but is not visible from any expressway due to an intervening obstruction.] (Ordinance No. 69–75, § 1, October 22, 1969.)

Section 5. NON–CONFORMING SIGNS. Signs which have been erected prior to the effective date of this ordinance may continue to be maintained until March 1, 1968. Thereafter, unless such signs conform to the provisions of this ordinance, they shall be removed. If a non-conforming spacing situation can be eliminated by the removal of one sign, the sign which has been erected for the longest period of time shall have priority.

Section 6. VARIANCES. No variances shall be granted through provisions of applicable regulations which will in any way conflict with or vary the provisions of this ordinance.

Section 7. PENALTY. Any person violating any of the provisions of this ordinance shall be punished by a fine not to exceed Five Hundred ($500.00) Dollars or by imprisonment in the County Jail for a period not to exceed sixty (60) days, or by both such fine and imprisonment, in the discretion of the Metropolitan Court. Any continuing violations of the provisions of this ordinance may be enjoined and restrained by injunctive order of the Circuit Court in appropriate proceedings instituted for such purpose.

Section 8. REPEAL CLAUSE. All County and municipal ordinances, County and municipal resolutions, municipal charters, special laws applying only to Dade County or any municipality in Dade County, or any general laws which the Board of County Commissioners is authorized by the Constitution to supersede, nullify, modify or amend, or any part of any such ordinance, resolution, charter or law, in conflict with any provision of this ordinance, is hereby repealed.

Section 9. INCLUSION IN CODE. The provisions of this ordinance shall be included and incorporated in the Code of Metropolitan Dade County, Florida, as an addition thereto, and the sections of this ordinance shall be appropriately renumbered to conform to the uniform numbering system of the Code.

Section 10. EFFECTIVE DATE. The provisions of this ordinance shall become effective ten (10) days after the date of its enactment.

tions of the ordinance are punishable by a fine not to exceed $500.00 or by imprisonment not to exceed sixty days, or both, and it is enforceable by way of injunction. The ordinance specifically provides that no variances shall be granted from its requirements under existing zoning procedures.

The net effect of Ordinance No. 63–26 is to prohibit all commercial outdoor advertising signs oriented to and serving any expressway in Dade County. While no commercial outdoor advertising sign, that is, any sign not coming within the classification of a "temporary sign" or a "point of sale sign", can be erected within 200 feet of an expressway right-of-way, "point of sale signs" and "temporary signs" may be erected within the 200-foot limit. Further, while a "point of sale sign" must be oriented to a street which provides access to a place of business, it may be used to advertise any product sold there, and if it is also visible from an expressway, it may thus indirectly serve the expressway.

The plaintiffs-appellants, E. B. Elliott Advertising Company, Outdoor Media, Inc., Donnelly Advertising Corporation of Florida, and Webster Outdoor Advertising Company, representing a class consisting of all persons who are in the outdoor advertising business or who own or lease outdoor advertising facilities in Dade County, Florida, contend that Ordinance No. 63–26 is invalid because: (1) it purports to prohibit or burden the conduct of a lawful business inconsistently with State law; (2) the prohibition of the outdoor advertising business in the "protected areas" has no real and substantial relation to the public health, safety or welfare, and thus is violative of the Due Process Clause of the Fourteenth Amendment; (3) the ordinance discriminates against appellants and others of their class so as to deny them the equal protection of the laws guaranteed by the Equal Protection Clause of the Fourteenth Amendment; and (4) the ordinance deprives appellants and others of their class of their property without just compensation and without due process of law, in violation of the Due Process Clause of the Fourteenth Amendment.

I. Before considering these contentions, however, we must determine if the appellants are barred from bringing this action under the doctrine of *res judicata*.

In 1965, E. B. Elliott Advertising Company brought an action in Dade County Circuit Court seeking a writ of mandamus to require the City of Miami to permit it to erect a commercial outdoor advertising sign on a site it had leased, which was located within 200 feet of an expressway. Dade County was joined as a party defendant since the matter was controlled by Ordinance No. 63–26. Elliott conceded for the purposes of appeal that if the ordinance was applicable to all types of outdoor advertising it could be supported by safety and aesthetic considerations and therefore did not violate the guarantee of due process under the Florida and United States Constitutions, but argued that the distinctions made between commercial signs and "point of sale signs" and between signs within 200 feet of an expressway right-of-way and those within the 600-foot limit, but outside the 200-foot limit constituted a denial of equal protection. The court upheld the validity of the ordinance and was affirmed. State ex rel. Boozer v. City of Miami, (Dade Cty.Cir. Ct. 1965) 26 Fla.Supp. 29, aff'd. (Fla. Dist.Ct.App.,1967) 193 So.2d 449, cert. den. (Fla.) 201 So.2d 553.

After the decision in *Boozer*, supra, Elliott applied for a Class C advertising permit to operate a commercial billboard on the same site. The application was denied. Elliott thereafter erected a Class C, commercial, sign, even though it possessed only a Class B, point of sale, permit and was charged with a violation of Ordinance No. 63–26. At the subsequent trial, Elliott contended that the ordinance was unconstitutional, but the court found this contention barred under the doctrine of *res judicata* by the decision in Boozer. Metropolitan Dade County v. E.

B. Elliott Adv. Co., Fla.Dist.Ct.App., 1968, 214 So.2d 511.

In Donnelly Adv. Co. v. Metropolitan Dade Cty., Dade Cty.Cir.Ct., No. 63 C 13906, ———, Donnelly sought a declaratory judgment that Ordinance No. 63–26 was invalid on constitutional grounds, but *Boozer* was held to be *res judicata*.

■■ Under the doctrine of *res judicata,* a prior judgment on the merits rendered by a state court of competent jurisdiction operates as a bar to a subsequent adjudication of the *same* cause of action, in substance rather than form, between the *same* parties or their privies in federal court, not only as to every matter which was offered and received to sustain or defeat the claim, but as to every other matter which might with propriety have been litigated and determined in that action, regardless of whether questions of federal or state law are involved. Acree v. Air Line Pilots Association, 5 Cir. 1968, 390 F.2d 199, cert. den. 393 U.S. 852, 89 S.Ct. 88, 21 L.Ed.2d 122; Hudson v. Lewis, 5 Cir. 1951, 188 F.2d 679; Iselin v. C. W. Hunter Co., 5 Cir. 1949, 173 F.2d 388; Jarrard v. Southeastern Shipbuilding Corporation, 5 Cir. 1947, 163 F.2d 960; Thompson v. Houston Oil Co., 5 Cir. 1930, 37 F.2d 687. 28 U.S.C. § 1738 (1948). However, it is equally elementary that one is not bound by a judgment *in personam* resulting from litigation in which he is not designated as a party or to which he has not been made a party by service of process. Zenith Radio Corp. v. Hazeltine Research, 395 U.S. 100, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969); Hansberry v. Lee, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940).

■ Two of the named plaintiffs-appellants in the instant action, Outdoor Media, Inc., and Webster Outdoor Advertising, were in no way involved in the previous actions brought by Donnelly and Elliott to challenge Ordinance No. 63–26, either as named parties or as members of a class being represented, and therefore are not bound by these previous adjudications. Nor are any unnamed members of the class represented in this action (with possible minor exception), which includes all persons who are in the outdoor advertising business or who own or lease outdoor advertising facilities in Dade County, Florida, bound by the prior state actions.

■■ Nor does this Court lack jurisdiction to decide the substantive issues presented by this appeal under the rule that a federal district court has no jurisdiction to directly review a final determination of federal constitutional questions, voluntarily submitted to and decided by state courts in state court litigation. Rooker v. Fidelity Trust Company, 263 U.S. 413, 44 S.Ct. 149, 68 L. Ed. 362 (1923); Paul v. Dade County, Fla., 5 Cir. 1969, 419 F.2d 10; Brown v. Chastain, 5 Cir. 1969, 416 F.2d 1012; Dade County Classroom Teachers' Ass'n v. Nathan, 5 Cir. 1969, 413 F.2d 1005; Hanna v. Home Insurance Company, 5 Cir. 1960, 281 F.2d 298, cert. den. 365 U.S. 838, 81 S.Ct. 751, 5 L.Ed.2d 747; Williams v. Tooke, 5 Cir. 1940, 108 F.2d 758. Each of these cases, with the possible exception of Paul v. Dade County, supra, expressly involved an effort to have a federal district court act as an appellate court and review or set aside a final state court judgment.[2] Clearly that

---

2. Rooker v. Fidelity Trust Company, supra, involved a bill in equity to have a judgment of an Indiana court declared null and void and to obtain other relief dependent on that outcome. Brown v. Chastain, supra, involved an attempt to have the denial of petition to afford an indigent mother a free trial transcript in a child custody suit by a state court reviewed by a federal district court. Dade County Classroom Teachers' Ass'n v. Nathan, supra, was an action for a declaratory judgment that a Florida trial

judge had no jurisdiction to enter an injunction against the association and to enjoin indirect criminal contempt proceedings in the Florida courts for alleged violations of the injunction after the Florida Supreme Court had upheld the jurisdiction of the trial court. Hanna v. Home Insurance Co., supra, dealt with a claim that state judges and court officials had conspired with a party in a prior state action where the plaintiff, because of a dispute over the record, did not file a statement of facts and transcript with the

is not the situation here. What is sought here is a *de novo* adjudication of the constitutionality of a county ordinance which had been challenged by some, but not all, of the plaintiffs and upheld in prior state litigation. Merely because a federal district court is called to pass upon federal constitutional issues which have previously been passed upon by a state court does not mean that the federal district court is assuming appellate jurisdiction to review a prior state judgment, even where some of the plaintiffs before it were also parties in the prior state action and may be barred under the doctrine of *res judicata*. The parties in this action who are unaffected by the prior state decisions are entitled to a determination of their constitutional rights under the ordinance, and it is their option whether to invoke the jurisdiction of the federal courts or the state courts. The statement of this Court in Paul v. Dade County, supra, that "[a] federal district court is without jurisdiction to hear federal constitutional claims already litigated in state courts when, as here, there is already a final appealable judgment by a state court at the time the federal suit is instituted" must be read in the light of *Rooker*, supra, and the other cases it relied on.[3]

Without determining the full extent to which Elliott and Donnelly are barred by their involvement in the prior state actions under the doctrines of *res judicata* and collateral estoppel, we hold that the remaining plaintiffs-appellants and the

class they represent are in no way barred from prosecuting this action and proceed to consider the substantive issues raised by this appeal.

II. The initial substantive issue presented here is whether Ordinance 63–26 conflicts with Chapter 479, Florida Statutes, 1967, F.S.A., which regulates outdoor advertising outside the corporate limits of any city or town, and is thereby void under the Dade County Home Rule Amendment to the Florida Constitution, Fla.Const.Art. VIII, § 11(5) & (9), F.S.A.

Chapter 479 requires a person engaged in the business of outdoor advertising in Florida outside the corporate limits of any city or town to obtain a license (§ 479.04) and a yearly permit to construct, erect, operate, use or maintain an outdoor advertising structure (§ 479.07) from the State Road Commissioner of the State Road Department. The Chapter further provides:

§ 479.11 No advertisement, advertising sign or advertising structure shall be constructed, erected, used, operated or maintained: (1) *Within fifteen feet of the outside boundary of any federal or state highway* or within one hundred feet of any church, school, cemetery, public park, public reservation, public playground, state or national forest, or railroad intersection outside the limits of any incorporated city or town. (Emphasis added.)
and further

Texas Court of Appeals within the required time limit and thereby lost his right to appeal an adverse state judgment. Finally, Williams v. Tooke, supra, was a suit to set aside a judgment of foreclosure on the grounds that the Texas courts had violated the plaintiff's constitutional rights.

3. In Paul v. Dade County, Fla., supra, the plaintiffs Paul and Feder sought a declaratory judgment that a Latin cross erected each December on the Dade County Courthouse violated the establishment and free exercise of religion clauses of the First Amendment to the Constitution. Paul had previously litigated the same

issue unsuccessfully in the Florida courts. Paul v. Dade County, Fla., Fla.Dist.Ct. App.1967, 202 So.2d 833, cert. den. (Fla.) 207 So.2d 690, cert. den. 390 U.S. 1041, 88 S.Ct. 1636, 20 L.Ed.2d 304. The Court held that there was no jurisdiction to entertain the action on the basis of *Rooker*, supra; *Hanna*, supra; and Brown v. Chastain, supra. The Court clearly felt that Paul was merely seeking to have the district court review the state judgment and that the inclusion of Feder as plaintiff was merely an artifice to assist in achieving this end. This being so, the Court could have just as easily held that the federal action was barred by *res judicata*.

§ 479.15. No zoning board of commission nor any other public officer or agency shall permit any advertisement or advertising structure which is prohibited under the provisions of this chapter *nor shall the chairman permit any advertisement or advertising structure which is prohibited by any other public board, officer or agency in the lawful exercise of its or their powers.* (Emphasis added.)

The appellants argue that the provisions of Ordinance 63–26 prohibiting commercial advertising signs *within 200 feet* of any expressway in Dade County conflicts with the requirement of § 479.-11, Florida Statutes, supra, that no advertising sign or structure shall be constructed, erected, used, operated or maintained *within fifteen feet* of the outside boundary of any federal or state highway outside the limits of any incorporated city or town in Florida and, therefore, is unconstitutional under § 11(5) and (9) of Article VIII of the Florida Constitution, which provide that "the home rule charter provided for herein shall not *conflict* with any provision of this Constitution nor of any applicable general laws now applying to Dade County * * * nor shall any ordinance enacted in pursuance to said home rule charter conflict with this Constitution or any such applicable general law except as expressly authorized herein * * *." (emphasis added) and that "the provisions of this Constitution and general laws which shall relate to Dade County * * * shall be the supreme law in Dade County, Florida, except as expressly provided herein * * *".

■ This contention, however, is without merit. The word "inconsistent", as used in § 6(f) of Article VIII means contradictory in the sense of legislative provisions which cannot co-exist and the same should be true of the word "conflict" in § 11(5). State ex rel. Dade County v. Brautigam, Fla.1969, 224 So. 2d 688. See Metropolitan Dade County Board of County Commissioners v. Rockmatt Corp., Fla.Dist.Ct.App.1970, 231 So.2d 41. And it cannot be said that § 479.11(1), Florida Statutes, F.S.A., and Dade County Ordinance No. 63–26 are *contradictory in the sense that they cannot coexist.* See Yates v. Helms, Fla. Dist.Ct.App.1963, 154 So.2d 731; Desert Outdoor Advertising v. County of San Bernardino, 1967, 255 Cal.App.2d 765, 63 Cal.Rptr. 543; Goldsmith v. City of Indianapolis, 1935, 208 Ind. 465, 196 N.E. 525. Section 479.15, supra, clearly indicates that Chapter 479 was designed to establish minimum regulations for the outdoor advertising business and does not prevent, but rather leaves the way open and encourages stricter regulations by other governmental agencies in the lawful exercise of their power.

■ Nor can there be any doubt that Dade County possesses the power to enact stricter regulations of outdoor advertising than that contained in Chapter 479, Florida Statutes, even without considering the County's power to provide for highway safety. See Dade County Home Rule Charter, Art. I § 1.01A(1); Hav-a-Tampa Cigar Co. v. Johnson, 149 Fla. 148, 5 So.2d 433 (1941). Under § 1.01A(21) of the Dade County Home Rule Charter, the Board of County Commissioners is expressly authorized to "exercise all powers and privileges granted to municipalities, counties and county officers by the Constitution and the laws of the state and all powers not prohibited by the Constitution or by this Charter". See State v. Dade County, Fla.1961, 127 So.2d 881. Chapter 176.02(1), Florida Statutes, F.S.A., provides that:

(1) For the purpose of promoting health, safety, morals, or the general welfare of the communities and municipalities of the state, said municipalities may regulate and restrict the height, number of stories, and size of buildings and other structures, the percentage of lot that may be occupied, the size of yards, courts, and other open spaces, the density of population, and the location and use of buildings, structures, and land and water for trade, industry, residence or other purposes.

Furthermore, it has been held by the Florida Supreme Court that the regulation of the size of outdoor signs and the prohibition of certain types of signs can be sustained on aesthetic grounds alone as promoting the general welfare, even though not required for the safety, morals or health of the general public. Dade County v. Gould, Fla.1957, 99 So.2d 236; Merritt v. Peters, Fla.1953, 65 So.2d 861.

III. The first issue of federal constitutional dimensions confronted by this Court is whether the prohibition of commercial advertising signs within 200 feet of any expressway right-of-way and their regulation within 600 feet of the right-of-way, as prescribed by Ordinance No. 63–26, bears a reasonable relation to permissible objectives which promote the public health, safety, morals and general welfare so as to satisfy the requirements of the Due Process Clause of the Fourteenth Amendment. See Williamson v. Lee Optical of Okl., 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955); City of Miami v. Woolin, 5 Cir. 1968, 387 F.2d 893; City of Houston v. Jas. K. Dobbs Co. of Dallas, 5 Cir. 1956, 232 F.2d 428.

Ordinance No. 63–26 is apparently designed to accomplish two ends: to promote highway safety on the expressway system of Dade County and to improve the beauty of the land surrounding these expressways thus to maintain and increase the attractiveness of the area to tourists, and residents alike, and thus influence the economic prosperity of the county. There can be no doubt but that these objectives are constitutionally permissible under the police power of the State of Florida. Florida has long recognized that outdoor advertising can be regulated to promote highway safety. Hav-a-Tampa Cigar Co. v. Johnson, 149 Fla. 148, 5 So.2d 443 (1941); John H. Swisher & Son v. Johnson, 149 Fla. 132, 5 So.2d 441 (1941); State ex rel. Boozer v. City of Miami, Fla.Dist.Ct.App.1967, 193 So.2d 449, cert. den. (Fla.) 201 So.2d 553. Likewise, Florida has sustained regulatory measures based on aesthetic considerations as promoting the general welfare. City of Miami Beach v. Ocean & Inland Co., 147 Fla. 480, 3 So.2d 364 (1941); Hav-a-Tampa Cigar Co. v. Johnson, supra, 5 So.2d 443, 439 (concurring opinion); Merritt v. Peters, Fla.1953, 65 So.2d 861; Sunad, Inc. v. City of Sarasota, Fla.1960, 122 So.2d 611; Rotenberg v. City of Fort Pierce, Fla.Dist.Ct. App.1967, 202 So.2d 782. Cf. Cromwell v. Ferrier, 19 N.Y.2d 263, 279 N.Y.S.2d 22, 225 N.E.2d 749 (1967), Desert Outdoor Advertising v. County of San Bernardino, 1967, 255 Cal.App.2d 765, 63 Cal. Rptr. 543. As was said in People v. Stover, 12 N.Y.2d 462, 466, 240 N.Y.S.2d 734, 738, 191 N.E.2d 272, 276:

> Once it be conceded that aesthetics is a valid subject of legislative concern, the conclusion seems inescapable that reasonable legislation designed to promote that end is a valid and permissible exercise of the police power.

The same can be said with equal vigor of highway safety.

All that remains to be determined is whether the provisions of Ordinance No. 63–26 bear a reasonable relationship to the constitutionally permissible objectives of highway safety and aesthetics. In doing so, it is well to reflect on what was said in Williamson v. Lee Optical of Okl., supra:

> But the law need not be in every respect logically consistent with its aims to be constitutional. It is enough that there is an evil at hand for correction, and that it might be thought that the particular legislative measure was a rational way to correct it.

> The day is gone when this Court uses the Due Process Clause of the Fourteenth Amendment to strike down state laws, regulatory of business and industrial conditions, because they may be unwise, improvident, or out of harmony with a particular school of thought. 348 U.S. at 487–488, 75 S.Ct. at 464.

The appellants argue that Ordinance No. 63–26 bears no reasonable relationship to highway safety, relying on the testimony of highway safety experts whose studies revealed no discernible

correlation between the placement of outdoor advertising signs along limited access highways, as here involved, and the occurrence of automobile accidents. Even so, we are unable to say that the Board of County Commissioners of Dade County was unreasonable in basing the ordinance, at least partially, on highway safety. The essential purpose of an advertising sign placed adjacent to a highway is to attract the attention of the motoring public long enough to convey a commercial message. Conceding that the message presented by an average sign can be comprehended by a motorist of average intelligence in an insignificant amount of time, and that eye movement improves the alertness of an expressway driver, the speed and density of modern expressway traffic, coupled with the braking limitations of the modern automobile, can conceivably make even the most insignificant amount of time during which a driver's attention is diverted a matter of direst consequences.

It is also clear that the prohibition of outdoor advertising signs within 200 feet of an expressway bears a reasonable relationship to basic aesthetic considerations. Granting that "beauty is to the eye of the beholder," it cannot be denied that outdoor advertising signs tend to interrupt what would otherwise be the "natural" landscape as seen from the highway, something it is apparently more and more felt that the American public has a right to see unhindered by billboards, whether the view is untouched or ravished by man. *See* Highway Beautification Act of 1965, 23 U.S.C. § 131, as amended (1966). Moreover, the importance of the tourist industry to Dade County tends to make Ordinance No. 63–26 reasonable in an economic sense because of the commercial benefits hoped to be realized from beautification.

The fact that Ordinance No. 63–26 prohibits commercial advertising signs in industrial or commercial areas of little or no natural beauty, or that it prohibits 40 commercial signs while leaving undisturbed 82 "point of sale signs" visible from the expressways, does not destroy its reasonable relationship to constitutionally permissible objectives. To reiterate:

> But the law need not be in every respect logically consistent with its aims to be constitutional. It is enough that there is an evil at hand for correction, and that it might be thought that the particular legislative measure was a rational way to correct it. Williamson v. Lee Optical of Okl., supra, 348 U.S. at 487–488, 75 S.Ct. at 464.

IV. The next issue to be decided is whether Ordinance No. 63–26 invidiously discriminates against the appellants and the class they represent so as to constitute a denial of the equal protection of the laws under the Fourteenth Amendment.

Appellants argue that Ordinance No. 63–26 unconstitutionally discriminates between commercial advertising signs and point of sale signs within the 200-foot protected area in that it requires the removal of commercial advertising signs while permitting point of sale signs, which may contain the same commercial message that a commercial advertising sign would contain if it were allowed, merely because the point of sale sign is located where the advertised product or service is available. Secondly, they argue that the ordinance unconstitutionally discriminates against landowners and lessees within the protected area adjacent to expressways in favor of those whose property is adjacent to other arterial streets and highways in Dade County. Thirdly, they argue that the ordinance discriminates against commercial advertising signs within 200 feet of an expressway, or within 600 feet and not technically oriented correctly, regardless of whether they are visible from the expressway.[4]

---

4. This issue has been rendered moot by the passage of Dade County Ordinance No. 69–75, passed October 22, 1969, amending Dade County Ordinance No. 63–26. *See* Dade County Ordinance No. 63–26, as amended, § 4(d), supra, footnote 1.

■ Simply stated, the requirements of the Equal Protection Clause are met if "the classifications drawn in a statute are reasonable in light of its purpose". McLaughlin v. Florida, 379 U.S. 184, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964). But no simple statement is ever complete. In Morey v. Doud, 354 U.S. 457, 77 S.Ct. 1344, 1 L.Ed.2d 1485 (1957), the Supreme Court, quoting Lindsley v. National Carbonic Gas Co., 220 U.S. 61, 78–79, 31 S.Ct. 337, 55 L.Ed. 369, said:

The rules for testing a discrimination have been summarized as follows:

"1. The equal protection clause of the Fourteenth Amendment does not take from the State the power to classify in the adoption of police laws, but admits of the exercise of a wide scope of discretion in that regard, and avoids what is done only when it is without any reasonable basis and therefore is purely arbitrary. 2. A classification having some reasonable basis does not offend against that clause merely because it is not made with mathematical nicety or because in practice it results in some inequality. 3. When the classification in such a law is called into question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed. 4. One who assails the classification in such a law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary." 354 U.S. at 463–464, 77 S.Ct. at 1349.

In Williamson v. Lee Optical of Okl., supra, the Court said.

The problem of legislative classification is a perennial one, admitting of no doctrinaire definition. Evils in the same field may be of different dimensions and proportions, requiring different remedies. Or so the legislature may think. * * * Or the reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind. * * * The legislature may select one phase of one field and apply a remedy there, neglecting the others. * * * The prohibition of the Equal Protection Clause goes no further than the invidious discrimination. 348 U.S. at 489, 75 S.Ct. at 465.

■ The classification between commercial advertising signs and point of sale signs which is challenged here has been upheld as reasonable by many state courts. See Cromwell v. Ferrier, supra; Schloss v. Jamison, 1964, 262 N.C. 108, 136 S.E.2d 691; Metromedia, Inc. v. City of Pasadena, 1963, 216 Cal.App.2d 270, 30 Cal.Rptr. 731; National Advertising Co. v. County of Monterey, 211 Cal.App. 2d 375, 1962, 27 Cal.Rptr. 136; United Advertising Corp. v. Borough of Raritan, 1952, 11 N.J. 144, 93 A.2d 362; Murphy, Inc. v. Town of Westport, 1944, 131 Conn. 292, 40 A.2d 177. Perhaps the leading case on the question is United Advertising Corp. v. Borough of Raritan, supra, where Mr. Justice Brennan of the U. S. Supreme Court, while serving as a justice on the Supreme Court of New Jersey, speaking for the Court, said:

The business sign is in actuality a part of the business itself, just as the structure housing the business is a part of it, and the authority to conduct the business in a district carries with it the right to maintain a business sign on the premises subject to reasonable regulations in that regard as in the case of this ordinance. Plaintiff's placements of its advertising signs, on the other hand, are made pursuant to the conduct of the business of outdoor advertising itself, and in effect what the ordinance provides is that this business shall not to that extent be allowed in the borough. It has long been settled that the unique nature of outdoor advertising and the nuisances fostered by billboards and similar outdoor structures located by persons in the business of outdoor advertising, justify the separate classification of such structures for the purposes of governmental regulation and restriction. 93 A.2d at 365.

In Railway Express Agency v. New York, 336 U.S. 106, 69 S.Ct. 463, 93 L.Ed. 533 (1949), the Supreme Court sustained New York City traffic regulations prohibiting advertising on all vehicles except business delivery vehicles engaged in the usual business or regular work of the owner and advertising the owner's business only as a reasonable classification in the light of traffic safety, reasoning that "[t]he local authorities may well have concluded that those who advertised their own wares on their trucks do not present the same traffic problem in view of the nature or extent of the advertising which they use". 336 U.S. at 110, 69 S.Ct. at 465. However, in concurring, (336 U.S. 111, 115–117, 69 S.Ct. 468) Mr. Justice Jackson said:

> Where individuals contribute to an evil or danger in the same way and to the same degree, may those who do so for hire be prohibited, while those who do so for their own commercial ends but not for hire be allowed to continue? I think the answer has to be that the hireling may be put in a class by himself and may be dealt with differently than those who act on their own. But this is not merely because such a discrimination will enable the lawmaker to diminish the evil. * *
> It is rather because there is a real difference between doing in self-interest and doing for hire, so that it is one thing to tolerate action from those who act on their own and it is another thing to permit the same action to be promoted for a price.

> \*　\*　\*　\*　\*　\*

The rule was flatly stated for the Court by Mr. Justice Brandeis: "In dealing with the problem of safety of the highways, as in other problems of motor transportation, the state may adopt measures which favor vehicles used solely in the business of their owners, as distinguished from those which are operated for hire by carriers who use the highways as their place of business". Bradley v. Public Utilities Commission, 289 U.S. 92, 97, 53 S.Ct. 577, 77 L.Ed. 1053, 1057, 85 A.L.R. 1131.

The classification drawn by Ordinance No. 63–26, is reasonable: there is a real difference between the outdoor advertising activity that must necessarily be carried out on the premises where a business is located in order that it may identify itself and attract customers and outdoor advertising which is carried out as a business in itself and which conveys commercial messages unrelated to the other uses to which the premises may be devoted. As was said in Morey v. Doud, supra, 354 U.S. at 466, 77 S.Ct. at 1350:

> Of course, distinctions in the treatment of business entities engaged in the same business activity may be justified by genuinely different characteristics of the business involved. * * *
> But distinctions cannot be so justified if the "discrimination has no reasonable relation to these differences".

Moreover, the classification is reasonable in light of the purpose of Ordinance No. 63–26: the promotion of highway safety and highway beautification, in that the removal of outdoor advertising signs which are not related to the operation of a business on the premises on which they are located will tend to reduce the overall number of outdoor advertising signs and thereby reduce the number of driver distractions and the number of aesthetic eyesores along the expressways of Dade County. As was noted earlier, "reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind". Williamson v. Lee Optical of Okl., supra, 348 U.S. at 489, 75 S.Ct. at 465.

The contention that the ordinance is void because it discriminates against landowners and lessees within the protected area adjacent to expressways in favor of those whose property is adjacent to other arterial streets and highways in Dade County must fail for the

same reason. Ordinance No. 63–26 is directed to correcting an evil the Board of County Commissioners has found to exist on the County's expressway system and the Board is not required under the Equal Protection Clause to correct all similar evils wherever they may exist in the County or none at all.

V. The final issue presented by this appeal is whether Ordinance No. 63–26 deprives the appellants and others of their class of their property without just compensation contrary to the due process requirements of the Fourteenth Amendment. See Panhandle E. Pipe Line Co. v. State Highway Comm., 294 U.S. 613, 55 S.Ct. 563, 79 L.Ed. 1090 (1935).

Ordinance No. 63–26 was enacted on July 2, 1963, and provides that nonconforming signs may continue to be maintained until March 1, 1968, thus providing an amortization period of five years. In Standard Oil Co. v. City of Tallahassee, N.D.Fla.1949, 87 F.Supp. 145, aff'd. 5 Cir. 1950, 183 F.2d 410, cert. den. 340 U.S. 892, 71 S.Ct. 208, 95 L.Ed. 647, it was held a zoning ordinance requiring the discontinuance of a nonconforming use after the expiration of a five-year amortization period did not constitute a deprivation of property without due process of law. Accord, Naegele Outdoor Adv. Co. v. Village of Minnetonka, Minn. 1968, 162 N.W.2d 206; City of Seattle v. Martin, 1959, 54 Wash.2d 541, 342 P. 2d 602; Grant v. Mayor and City Council of Baltimore, 212 Md. 301, 129 A.2d 363 (1957); City of Los Angeles v. Gage, 1954, 127 Cal.App.2d 442, 274 P.2d 34. Therefore, the requirement contained in the ordinance that all nonconforming signs be removed by March 1, 1968, does not constitute a taking of property for which compensation must be given under the Fourteenth Amendment.

The judgment of the District Court is hereby

Affirmed.