Joseph P. GIORDANO et al.

v.

Hiram F. STUBBS et al.

Civ. A. No. 15577.

United States District Court,
N. D. Georgia,
Atlanta Division.

Dec. 17, 1971.

---

Haas, Holland, Levison & Gibert, Atlanta, Ga., for plaintiffs.

Stark & Stark, Lawrenceville, Ga., for Peevy.

Huie & Harland, Atlanta, Ga., for Stubbs.

1. "No sale of real estate under powers contained in mortgages, debt, deeds, or other lien contracts shall be valid unless the sale shall be advertised and conducted at the time and place and in the usual manner of sheriff's sales in the county in which such real estate, or a part thereof, is located."

ORDER

EDENFIELD, District Judge.

Plaintiffs seek declaratory and injunctive relief against the enforcement of [1970 Supp.] Ga.Code Ann. § 67–1506 [1] on the ground that this statute, as authoritatively construed by the Georgia courts, deprives them of their property without due process of law and is unconstitutional. A three-judge court has already determined that this case should be decided by a single judge. Giordano v. Stubbs, 335 F.Supp. 107 (N.D.Ga., 1971). Jurisdiction is alleged under 28 U.S.C. § 1331(a) (1970).

Plaintiffs' complaint alleges that they were indebted to defendant Stubbs in the amount of $30,000 which was secured by a first security deed on certain real property owned by them. Subsequently plaintiffs sold the property to defendant Pope who assumed the debt to Stubbs and also gave plaintiffs a note for $163,500 secured by a second security deed on the property. Pope defaulted both on the debt to Stubbs and the debt to plaintiffs and is now insolvent. Thereafter Stubbs foreclosed on the property by selling it at public outcry pursuant to a power of sale contained in his first security deed. He did not give actual notice of the sale to plaintiffs and his agent purchased the property at the sale for $35,000 which he applied against the debt, interest, and expenses of the foreclosure sale, leaving no excess. The land is allegedly worth $200,000. As a result of the sale a deed was executed in favor of Stubbs purporting to convey the property to him, and the deed was recorded in Gwinnett County, Georgia, by defendant Peevy, the Clerk of the Superior Court of Gwinnett County.

Plaintiffs claim that under § 67–1506 of the Georgia Code, defendant Stubbs

This section was originally codified as § 37–607 but its location has now been transferred to Title 67 of the Georgia Code. *See* the Editorial Note to [1970 Supp.] Ga.Code Ann. § 67–1503.

was required only to advertise the foreclosure sale; he was not statutorily required to give them actual notice. They say that had they received notice they would have appeared at the sale and bid on the property to protect their interest. Since § 67–1506 does not require actual notice in such circumstances, plaintiffs contend it is unconstitutional because it deprives them of their property without due process.

The matter is now before the court on defendants' motions to dismiss and on plaintiffs' motion for summary judgment.

The pleadings reveal that plaintiffs filed an action in the Superior Court of DeKalb County, Georgia, on February 5, 1970 which sought to annul the sale of the property in question by Stubbs and to enjoin its future sale. Plaintiffs filed an amendment to their original complaint which was allowed filed by the Superior Court on February 20th. In paragraph 15 of the amendment plaintiffs alleged that Stubbs gave them no notice of the foreclosure proceedings. In paragraph 20 of the amendment plaintiffs alleged that Stubbs' conduct violated the Constitution of the State of Georgia and the Fifth and Fourteenth Amendments to the Constitution of the United States in that it deprived them of their property without due process of law. In his answer to the complaint, Stubbs, as part of the third defense, alleged that he had duly advertised the time, terms, and place of sale once a week for four weeks immediately preceding the sale in the *Gwinnett Daily News.* As part of his fourth and fifth defenses, Stubbs alleged that he had provided the notice required under the power of sale provisions of the security deed and had not violated any of plaintiffs' legal or equitable rights.

On March 4, 1970 Stubbs moved for summary judgment in the Superior Court on the ground that there was no legal or equitable claim sufficient to authorize a judgment against him. On October 1, 1970 plaintiffs moved for summary judgment in the Superior Court

and in paragraph 4 of their motion contended that no actual notice of the foreclosure had been given them by Stubbs. On March 8, 1971, the Superior Court denied both motions for summary judgment on the ground that genuine issues of material fact existed. Giordano v. Stubbs, Civil No. 54927 (Super.Ct. De-Kalb County, Ga., Mar. 8, 1971). However, the order was certified for review.

On March 12, 1971 plaintiffs appealed to the Georgia Court of Appeals. From the pleadings it appears that plaintiffs appealed to that court rather than the Georgia Supreme Court because they believed that all equitable issues had been removed from the case and that the Superior Court had not passed on the constitutional issue which plaintiffs had raised. The Constitution of the State of Georgia provides that the Georgia Court of Appeals has appellate jurisdiction in all cases in which such jurisdiction has not been conferred upon the Georgia Supreme Court, and the Georgia Supreme Court has appellate jurisdiction over all equity cases and all cases involving constitutional issues. Ga.Const. art. 6, § 37, ¶¶ 4, 8. Stubbs filed a cross-appeal in the Georgia Court of Appeals, and he filed an appeal in the Georgia Supreme Court, to which plaintiffs cross-appealed, on the ground that the action was an equity case. On its own motion, the Georgia Court of Appeals transferred plaintiffs' appeal to the Georgia Supreme Court where it was consolidated with Stubbs' appeal.

In his Enumeration of Errors filed in the Georgia Supreme Court, Stubbs contended the Superior Court had erred in denying his motion for summary judgment since, among other things, as a matter of law he was not required to give actual notice of the foreclosure sale to plaintiffs and as a matter of law the foreclosure sale did not deprive plaintiffs of their property without due process of law in violation of the Constitution of the State of Georgia and the Fifth and Fourteenth Amendments to the Constitution of the United States. In his brief Stubbs argued, among other

things, that Georgia law required no more than that he give publication notice of the foreclosure sale, which he contended he gave, and that the United States Supreme Court in Scott v. Paisley, 271 U.S. 632, 46 S.Ct. 591, 70 L.Ed. 1123 (1926), had explicitly held that this Georgia notice procedure in foreclosures did not amount to a deprivation of property without due process of law and was not unconstitutional. Plaintiffs filed a general Enumeration of Errors, but in their brief they argued that jurisdiction of their appeal was properly in the Georgia Court of Appeals since the action was not an equity case and the constitutional issue raised had not been passed on by the Superior Court. They also argued, among other things, that if the Georgia Supreme Court did have jurisdiction, it should hold the Georgia notice procedure in foreclosure sales unconstitutional. They contended that recent decisions of the United States Supreme Court completely undermined the foundations of Scott v. Paisley.

On August 31, 1971, after argument had been completed in the appeals pending before the Georgia Supreme Court, plaintiffs filed the instant action in this court. Two weeks later Stubbs brought this to the attention of the Georgia Supreme Court in a "Reply Brief" and argued that the filing of the action in this court by plaintiffs showed that they abandoned all claims in the pending state appeal save the constitutional claim. As to that claim, argued Stubbs, Scott v. Paisley offered a clear rebuttal. Plaintiffs then filed a "Supplementary Reply Brief" in the Georgia Supreme Court in which they denied they had abandoned any of their claims by filing the instant action in this court and reiterated their argument that the constitutional issue they had raised before the Superior Court had never been passed upon and need not be reached by the Georgia Supreme Court.

On September 27, 1971, the Georgia Supreme Court held that Stubbs was entitled to summary judgment and that the lower court erred in denying his motion therefor. Giordano v. Stubbs, 228 Ga. 75, 184 S.E.2d 165 (1971). In the very first conclusion of law, the Georgia Supreme Court held that the notice by publication which Stubbs had given complied both with the provisions of the security deed and with [1970 Supp.] Ga. Code Ann. § 67–1506 and that such notice was sufficient. The court rejected plaintiffs' claims that they were entitled to actual notice and it cited Scott v. Paisley for support. It is not clear whether plaintiffs have appealed this decision to the United States Supreme Court, but they obtained an order from the Georgia Supreme Court on October 6th staying remittitur of the case for ninety days to allow for such an appeal.

The court has recited this rather involved history because the basis for Stubbs' motion to dismiss in the instant case is that the constitutional cause of action raised by plaintiffs here has been raised, fully litigated, and finally adjudicated in state court proceedings involving the same parties and is therefore barred under the principle of res judicata. Stubbs further contends that this court lacks subject matter jurisdiction over the case. The court will deal with the jurisdictional issue first.

In Brown v. Chastain, 416 F.2d 1012 (5th Cir. 1969), cert. denied, 397 U.S. 951, 90 S.Ct. 976, 25 L.Ed.2d 134 (1970), the Fifth Circuit, in a 2–1 decision, held that a federal district court lacks jurisdiction to directly review a final determination of a federal constitutional question voluntarily submitted to and decided by state courts. It placed primary reliance for this holding on Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed.2d 362 (1923).

The facts in Brown v. Chastain were that a divorced mother and her child filed an appeal in a state court of appeals in which they sought to reverse an order of a lower court which had changed the custody of the child from her mother to her father. The mother and child were unable to pay the cost of preparing a transcript of the testimony in the lower court, and they petitioned

first the lower court and then the court of appeals for an order requiring either the state or the father to pay the transcript cost. Both petitions were denied and an appeal to the state supreme court was dismissed. No attempt was made for direct review by the United States Supreme Court through certiorari. The mother and child then filed suit in federal district court, naming the lower state court judges as defendants, and prayed, among other things, for a mandatory injunction which would require the state to provide the transcript at the state's expense or at the expense of the father. They alleged that the state's denial of a free transcript violated the Due Process and Equal Protection Clauses of the Fourteenth Amendment. After a hearing was held the federal district court entered judgment in favor of the state and against the mother and her child. The majority on the Fifth

Circuit panel which heard the case on appeal held that the independent equitable proceedings instituted by the mother and child to prevent the enforcement of the state court judgments constituted a direct attack on those judgments and an attempt to relitigate the federal constitutional questions already finally determined in those state courts. The judgment of the federal district court was reversed with instructions to dismiss the complaint for want of jurisdiction.[2]

The jurisdictional question was again before the Fifth Circuit in Paul v. Dade County, Florida, 419 F.2d 10 (5th Cir. 1969), cert. denied, 397 U.S. 1065, 90 S. Ct. 1504, 25 L.Ed.2d 686 (1970). In that case the complaint sought a declaration that the erection of a cross each December on the Dade County courthouse with the approval of the county government violated the Establishment and Freedom of Religion Clauses of the

2. In his scholarly dissent, Judge Rives wrote that the majority's reliance on *Rooker* was misplaced. As Judge Rives viewed the case before the panel, there were two related but distinct questions:

   1. Did the federal district court have jurisdiction?
   2. If the district court had jurisdiction, should it have refrained from exercising that jurisdiction because of the principle of res judicata?

   With respect to the first question, Judge Rives read *Rooker* and its progeny to speak not to jurisdiction but to estoppel by judgment. The question of jurisdiction, wrote Judge Rives, should be decided by determining whether the Constitution or the various statutes enacted by Congress conferred power on the district court to hear the dispute brought before it. In the case before the panel, Judge Rives felt that the appellants had sufficiently alleged deprivation of rights secured by the Fourteenth Amendment and 42 U.S.C. § 1983 (1970) and that, as a result, the district court had the power to reach the merits of their complaint under 28 U.S.C. § 1343 (1970). He would therefore have resolved the first question in the affirmative.

   With respect to the second question, Judge Rives stated his recognition of the validity of the principle of estoppel by judgment—res judicata and collateral estoppel—as a limitation on the exercise of

power by the federal courts. However, Judge Rives expressed his belief that in cases significantly involving human liberty and substantive national rights, which are premised upon 42 U.S.C. § 1983 and 28 U.S.C. § 1343, the limitation imposed by the principle of estoppel by judgment should not be given effect. He would therefore have resolved the second question in the negative. Chief Justice Burger and Mr. Justice White have expressed their desire that the Supreme Court consider the position taken by Judge Rives concerning estoppel by judgment. Florida State Board of Dentistry v. Mack, 401 U.S. 960, 961–962, 91 S.Ct. 971, 28 L.Ed.2d 245 (1971) (dissenting from the denial of certiorari).

   Whatever the merits of Judge Rives' argument on the jurisdictional question, this court's own reading of *Rooker* is in line with that of the majority in Chastain. In *Rooker* a three-judge federal district court had dismissed a bill in equity which sought to have a judgment of an Indiana state court, that had been affirmed by the Indiana Supreme Court, declared null and void. The ground for the dismissal by the district court was that the suit was not within its jurisdiction. The Supreme Court affirmed the decree dismissing the suit on the express ground that the suit was "plainly not within the District Court's jurisdiction." 263 U.S. at 415, 44 S.Ct. at 150.

First Amendment. The district court dismissed the complaint on the ground that plaintiffs had failed to reveal a specific statutory grant of jurisdiction. The Fifth Circuit found that plaintiffs had properly alleged jurisdiction, but affirmed the district court on the ground that it lacked jurisdiction over the case. It appeared during the course of the appeal that one of the appellants had previously litigated the same constitutional question in Florida state court and certiorari had been denied both by the Florida Supreme Court and the United States Supreme Court. On the strength of *Chastain* the unanimous panel held that the district court had no jurisdiction to decide the merits.[3]

Had developments in the Fifth Circuit on this jurisdictional issue ended there, this court would have been obliged to dismiss the instant complaint for want of jurisdiction. However, the matter arose once more in E. B. Elliott Adv. Co. v. Metropolitan Dade County, 425 F.2d 1141 (5th Cir.), cert. denied, 400 U.S. 805, 91 S.Ct. 12, 27 L.Ed.2d 35 (1970). In *Elliott* the Fifth Circuit held that the district court did not lack jurisdiction to consider the merits of the case despite the fact that some, but not all, of the plaintiffs had litigated the same constitutional question previously in state court and had lost. The panel reviewed the holdings of the Circuit on this issue and noted that in *Rooker* and *Chastain*, as well as several other cases, plaintiffs had expressly attempted to have the federal district courts set aside a final state court judgment. Thus in *Rooker* plaintiffs had filed a bill in equity seeking to declare the judgment of an Indiana state court null and void. In *Chastain* the plaintiffs brought equitable proceedings against several state court judges who had denied the relief they were requesting again in the federal district court. In its own case, said the *Elliott* panel, plaintiffs were seeking

a *de novo* adjudication of the constitutionality of a county ordinance whose validity had been challenged by some, but not all, of the plaintiffs and upheld in prior state litigation, and the rule of *Rooker* and *Chastain* did not apply.

From this court's vantage point, *Elliott* and Paul v. Dade County, Florida, *snpra,* conflict. For in Paul v. Dade County there was no direct challenge by plaintiffs in federal district court upon a final state judgment of the *Rooker* or *Chastain* variety; indeed, it was only discovered during the course of appeal that the same constitutional issue raised by Mr. Paul and Miss Feder in federal court had been raised by Mr. Paul prevously in state court and finally determined adversely to Mr. Paul. More importantly, the panel in Paul v. Dade County concluded that the district court lacked jurisdiction even though only *one* of the plaintiffs, Mr. Paul, and not both, had litigated the same constitutional question in state court. The panel in *Elliott* said:

> "Merely because a federal district court is called to pass upon federal constitutional issues which have previously been passed upon by a state court does not mean that the federal district court is assuming appellate jurisdiction to review a prior state judgment, even where some of the plaintiffs before it were also parties in the prior state action and may be barred under the doctrine of res judicata. The parties in this action who are unaffected by the prior state decisions are entitled to a determination of their constitutional rights under the ordinance, and it is their option whether to invoke the jurisdiction of the federal courts or the state courts." 425 F.2d at 1149.

The panel in *Elliott* apparently recognized the conflict but kept Paul v. Dade County alive and said it should be read

---

3. The panel also held that the fact that the United States Supreme Court had denied certiorari review of the Florida state court determination, whereas in *Chastain* plaintiffs had not sought such review, was not a ground for distinguishing its case from *Chastain*.

in light of the cases upon which it was based. It did allow, however, that:

> "The Court [In Paul v. Dade County] clearly felt that Paul was merely seeking to have the district court review the state judgment and that the inclusion of Feder as plaintiff was merely an artifice to assist in achieving this end. This being so, the Court could have just as easily held that the federal action was barred by res judicata." At 1149, n. 3.

In the case before this court, all three plaintiffs were party plaintiffs in the state court proceedings in which the constitutional issue raised here was also raised. However, the complaint on its face does not attack the final state court judgments and is not of the *Rooker* or *Chastain* variety. With some hesitation, this court will follow the suggestion of the panel in *Elliott* and, assuming *arguendo* that it has jurisdiction to decide this case, will pass to the question of res judicata.

Plaintiffs voluntarily submitted the same constitutional issue they raise here to the Superior Court of DeKalb County in paragraphs 15 and 20 of their amended complaint and in their motion for summary judgment filed in that court. In his motion for summary judgment Stubbs asked the Superior Court, in effect, to rule against plaintiffs on all grounds, including the constitutional one. When the Superior Court declined to so rule, Stubbs specifically enumerated as error in the Supreme Court the lower court's failure to hold as a matter of law that the Georgia notice procedure in foreclosures which he had followed was not unconstitutional, and he briefed that issue, citing Scott v. Paisley. Although it is evident that plaintiffs did not wish the Georgia Supreme Court to reach the constitutional issue—as can

be seen by their abortive attempt to appeal to the Georgia Court of Appeals and their "Supplementary Reply Brief" filed in the Georgia Supreme Court—it is equally evident they understood that the constitutional issue had been submitted to the Superior Court and could have been reached by the Georgia Supreme Court. It is for this reason that they, too, briefed the constitutional issue in the Georgia Supreme Court. And, as the court has already pointed out, the Georgia Supreme Court clearly made a final determination on the constitutional issue and, citing Scott v. Paisley, held that the Georgia notice procedure in foreclosure sales which Stubbs had followed was immune from plaintiffs' attack.

Plaintiffs here did not, as did the plaintiffs in England v. Louisiana State Board of Medical Examiners, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964), begin first in federal district court and then, under an abstention announcement, proceed to litigate the federal constitutional issue in state court. On the contrary, plaintiffs started out in state court, presented the same federal constitutional claim they raise here to that court, and have now had a final decision on the merits of that claim by the highest court in Georgia. *See* Davis v. Adams, 315 F.Supp. 1293 (N.D.Fla. 1970). Plaintiffs did not "reserve" the constitutional issue for determination by this court.

Under the doctrine of res judicata, a prior judgment on the merits rendered by a state court of competent jurisdiction operates as a bar to a subsequent adjudication of the same cause of action between the same parties in federal court. E. B. Elliott Adv. Co. v. Metropolitan Dade County, supra, 425 F.2d at 1148. It follows that the complaint in the instant case must be dismissed.[4]

---

4. The cases cited by plaintiffs attempting to distinguish this rule where a constitutional issue is involved are inapposite. In particular, there is nothing in Mack v. Florida State Board of Dentistry, 430 F.2d 862 (5th Cir. 1970), cert. denied, 401 U.S. 960, 91 S.Ct. 971, 28 L.Ed.2d 245 (1971), to suggest that federal constitutional claims raised therein had been raised previously by that plaintiff in the

Accordingly, plaintiffs' motion for summary judgment is denied, defendants' motions to dismiss this complaint are granted, and the complaint is hereby dismissed.

It is so ordered.

state courts. *See* Mack v. Pepper, 192 So.2d 66 (Fla.3d Dist.Ct.App.1966), cert. denied, 201 So.2d 551 (Fla.1967).

It might be added that Judge Rives' dissent in *Chastain* did not question the applicability of the res judicata principle to suits involving constitutional issues not premised upon 42 U.S.C. § 1983 and 28 U.S.C. § 1343, such as the instant case.